**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CHARLES ADAMS, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 98-400-JWD-RLB** |
| **UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA, AFL-CIO, LOCAL 198, ET AL.** | |

## NOTICE REGARDING REASONS FOR JUDGMENT

The Court issues this notice to provide information to the parties concerning the Court's ruling on Defendant's Motion for Summary Judgment regarding timeliness of Plaintiffs' claims. (Doc. 639). The Court will issue oral reasons for judgment on Defendant's motion regarding the Plaintiffs who do not oppose the motion on **July 16, 2019, at 9:00 a.m. in courtroom 1. Counsel shall participate by telephone. Counsel for Defendant is responsible for coordinating the call to the Court (225-389-3568). All parties must participate from a landline.** The Court will then issue written reasons for judgment on Defendant's motion regarding the Plaintiffs who oppose the motion. Once the Court has ruled on the pending motion in its entirety, the Court will notice a status conference with all counsel to discuss the remaining claims.

## ORAL ARGUMENT NOT NECESSARY

The Court has thoroughly reviewed all memoranda and attachments submitted by all parties, as well as the Court-ordered chart, recently amended on May 10, 2019, and again on June 24, 2019. The Court also conducted a telephone conference with all counsel on May 31, 2019, to discuss remaining questions regarding specific Plaintiffs and his/her position with regard to the motion for summary judgment on timeliness. As a result, oral argument is not necessary, and the Court is prepared to rule.

## LEGAL STANDARDS GOVERNING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON TIMELINESS

Defendant's motion is limited to the issue of timeliness of Plaintiffs' claims only and will be governed by the following principles of law. This document does not include every case or principle the Court will rely upon. Rather, these are the rules and standards which the Court believes are applicable and overarching.

## Standard for Rule 56 Motion

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts … [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(citations and internal quotations omitted). The party opposing the motion for summary judgment may not sit on his hands, complacently relying on the pleadings. *Weyant v. Acceptance Ins. Co.*, 917 F.2d 209 (5th Cir. 1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. General allegations that fail to reveal detailed and precise facts will not prevent the award of summary judgment. *Walton v. Alexander*, 20 F.3d 1350, 1352 (5th Cir. 1994). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## State Law Claims of Racial Discrimination

Louisiana Revised Statute 23:303 provides, in relevant part:

> D. Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months.

*See Williams v. Otis Elevator Co.*, 557 Fed. App'x. 299, 302 (5th Cir. 2014).

The Louisiana Employment Discrimination Law ("LEDL") has a one-year prescriptive period. La. Rev. Stat. 23:303(D); *Bellow v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 913 F.Supp.2d 279, 289 (E.D. La. 2012), *aff'd in part sub nom. Bellow v. LeBlanc*, 550 Fed. App'x. 181 (5th Cir. 2013); *Nabors v. Metro. Life Ins. Co.*, No. 12-827, 2012 WL 2457694, at *3

(citing La. R.S. 23:303(D)). "Under Louisiana law, prescription statutes are strictly construed against prescription and in favor of the claim sought to be extinguished; thus, a construction that favors maintaining an action rather than barring it should usually be adopted." *Nabors*, 2012 WL 2457694, at *4 (citations and quotations omitted). "Ordinarily, the burden of proof is on the party pleading prescription; however, when the plaintiff's petition has clearly prescribed on its face the burden shifts to the plaintiff to prove that prescription has been suspended or interrupted." *Id*. (citations and quotations omitted).

The prescriptive period "begins to run on the date that the discrimination occurs." *Nabors*, 2012 WL 2457694, at *3; *see also Bellow*, 913 F.Supp. at 289 ("Prescription under the statute commences on the day that the termination occurred."). "[T]his one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights." La. Rev. Stat. 23:303(D). "No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months." *Id*. "Therefore, the total amount of time that a plaintiff has to bring a claim under Louisiana Revised Statute 23:322 is eighteen months." *Bellow*, 913 F.Supp.2d at 289; *see also Nabors*, 2012 WL 457694, at *3 ("Consequently, the LEDL requires a plaintiff to file suit on his discrimination claim no later than eighteen months after the occurrence forming the basis for the claim." (citations omitted)).

**Negligence Claims**

"Generally, prescription statutes are strictly construed against prescription and in favor of the claim sought to be extinguished by it; thus, of two possible constructions, that which favors maintaining, as opposed to barring an action, should be adopted." *Wells v. Zadeck*, 2011-1232 (La. 3/30/12); 89 So. 3d 1145, 1149 (citing *Carter v. Haygood*, 04–0646 (La. 1/19/05); 892 So. 2d 1261, 1268; *Bailey v. Khoury*, 04–0620 (La. 1/20/05); 891 So. 2d 1268). Further, ordinarily, the party raising the defense of prescription bears the burden of proof. *Wells*, 89 So. 3d at 1149 (citing *Campo v. Correa*, 01–2707, p. 7 (La. 6/21/02); 828 So.2d 502, 508). "However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed." *Wells*, 89 So. 3d at 1149 (citing *Campo*, 01–2707 at p. 7; 828 So.2d at 508; *Williams v. Sewerage & Water Bd. of New Orleans*, 611 So.2d 1383, 1386 (La. 1993)).

Louisiana Civil Code article 3492 states that "[d]elictual actions are subject to a liberative prescription of one year," and "[t]his prescription commences to run from the day injury or damage is sustained." La. Civ. Code art. 3492. Article 3467 further provides, "Prescription runs against all persons unless exception is established by legislation." La. Civ. Code art. 3467.

**Claims pursuant to 42 U.S.C. § 1981**

Defendant argues that the applicable prescriptive time period to Plaintiffs' claims pursuant to 42 U.S.C. § 1981 is one year. Plaintiffs offer no argument or disagreement with this time period. However, this is incorrect.

3

Section 1981 does not contain a statute of limitations. *See Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 371, 124 S.Ct. 1836, 1839 (2004). When a federal statute does not contain a statute of limitations, courts should apply "the most appropriate or analogous state statute of limitations." *Id.* Under Louisiana law, "[a] section 1981 claim is best characterized as a tort ... and is, therefore, governed by the one-year prescriptive period for delictual actions dictated by [Louisiana Civil Code article] 3492." *Taylor v. Bunge Corp.,* 775 F.2d 617, 618 (5th Cir.1985). However, for actions arising under federal statutes enacted after December 1, 1990, courts must apply a catchall four-year statute of limitations. *See* 28 U.S.C. § 1658 ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.").

Section 1981 was originally enacted as part of the Civil Rights Act of 1866 and covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Patterson v. McLean Credit Union,* 491 U.S. 164, 179, 109 S.Ct. 2363, 2374 (1989). Section 1981 "did not protect against harassing conduct that occurred after the formation of the contract." *Jones,* 541 U.S. at 372, 124 S.Ct. at 1840 (citing *Patterson,* 491 U.S. 164, 109 S.Ct. 2363). Section 1981 was later amended by the Civil Rights Act of 1991 to create a cause of action for discriminatory and retaliatory conduct occurring after the formation of the contract. *See id.* Thus, the applicable statute of limitations depends upon whether the claim was actionable under the older version of section 1981 or is only made possible by the 1991 amendments. *See id.* at 382, 124 S.Ct. at 1845. Where the plaintiff's claim was available under the original section 1981, the court must apply the analogous state statute of limitations, which in Louisiana is one year. *See id.* at 371, 124 S.Ct. at 1839; *Taylor,* 775 F.2d at 618. However, where the claim is only available under section 1981 as amended, the cause of action is said to "arise under" the Civil Rights Act of 1991 and the federal four-year statute of limitations provided by section 1658 applies. *See Jones,* 541 U.S. at 382, 124 S.Ct. at 1845.

This Court has previously explained that:

> Section 1981 does not contain a limitations period. Section 1981 employment discrimination claims that are based on conduct occurring *after* the formation of a contract have a four year statute of limitations under 28 U.S.C. § 1658(a). *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S.Ct. 1836 (2004); *Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 341 (5th Cir. 2005). Whereas, a claim cognizable under § 1981 *before* it was amended by the Civil Rights Act of 1991, such as a claim based on the failure to enter into a new contract, is governed by the relevant state personal injury limitations period[.] … Under the pre-1991 version of § 1981 a failure to promote claim was actionable if the promotion rose to the level of an opportunity for a new and distinct relation between the employee and the employer. *Blanson v. Graphic Packaging International, Inc.*, 2007 WL 438193 (W.D. La. Jan. 9, 2007), citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 2377 (1989).

*Hubert v. City of Baton Rouge/Parish of E. Baton Rouge, Dep't of Pub. Works*, No. CIV.A. 08-515-SCR, 2009 WL 774343, at *1 (M.D. La. Mar. 20, 2009).

Here, Plaintiffs are claiming racial discrimination based on alleged conduct that occurred during their apprenticeship or membership with Local 198; therefore, Plaintiffs' claims arose under the Civil Rights Act of 1991 and the federal four-year statute of limitations applies. *See also, Balakrishnan v. Board of Sup'rs of Louisiana State Univ. and Agr. And Mech. College*, 2009 WL 2175974, *6-7 (E.D. La. July 21, 2009) (where the four-year statute of limitations applied to claims of racial discrimination under Section 1981).

**Claims of Racial Discrimination under Title VII**

Under Title VII, "[a] private plaintiff must exhaust [his] administrative remedies by timely filing a charge with the EEOC and receiving a right-to-sue notice before seeking relief from the Court." *Williams v. Louisiana*, CV 14-00154-BAJ-RLB, 2015 WL 5318945, at *3 (M.D. La. Sept. 11, 2015) (citing *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378-79 (5th Cir. 2002); 42 U.S.C. § 2000e-5(f)(1)). Generally, "[a] charge under [Title VII] shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1). However, the "time period is extended to proceedings with a State or local agency with authority to grant or seek relief from such practice[,]'" such as Louisiana. *Conner v. Louisiana Dep't of Health & Hospitals*, 247 Fed. App'x. 480, 481 (5th Cir. 2007).

Under Title VII, "a plaintiff must file a charge of discrimination within 300 days of the alleged discriminatory act." *Harrison v. Estes Express Lines*, 211 F. App'x 261, 264 (5th Cir. 2006) (per curiam) (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Nabors v. Metro. Life Ins. Co*., No. 12-827, 2012 WL 2457694, at *2-3 (W.D. La. May 30, 2012), *report and recommendation adopted*, No. 12-827, 2012 WL 2427169 (W.D. La. June 26, 2012).

The United States Court of Appeals for the Fifth Circuit has observed that "[o]ne of the central purposes of the employment discrimination charge is to put employers on notice of 'the existence and nature of the charges against them.' " *Manning v. Chevron Chem. Co., LLC,* 332 F.3d 874, 878 (5th Cir.2003) (quoting *EEOC v. Shell Oil Co.,* 466 U.S. 54, 77 (1984)). A charge must be "in writing under oath or affirmation," must sufficiently identify the parties, and must generally describe the action or practices that are the basis of the complaint. 42 U.S.C. § 2000e–5(b); 29 C.F.R. § 1601.12(b). Although the governing regulations list specific information that should be contained in each charge, the regulations also provide that "[a] charge may be amended to cure technical defects or omissions," and that such amendments "related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b).

The Fifth Circuit has previously held that "an intake questionnaire that informs the EEOC of the identity of the parties and describes the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge to the respondent is sufficient to " 'set[ ] the administrative machinery in motion.' " *Conner,* 247 Fed.Appx. at 481 (quoting *Price v. Sw. Bell Tel. Co.,* 687 F.2d 74, 78 (5th Cir.1982)). In *Price,* the Fifth Circuit reversed and remanded a grant of summary judgment for the defendant in a Title VII sex discrimination action in which a *pro se* claimant timely filed an intake questionnaire with the EEOC that did not fulfill all of the technical

5

regulatory requirements of a charge. *Price,* 687 F.2d at 78–79. Notwithstanding the deficiencies of the intake questionnaire relative to the requirements of a charge, the agency still deemed the information provided to be sufficient to take action and notify the defendant. *See id.* at 76. In 2007, the Fifth Circuit reiterated its holding in *Price. See Conner,* 247 Fed.Appx. 480. The *Conner* Court reversed and remanded a race and disability discrimination and retaliation action that was dismissed by the district court on the ground that the plaintiff failed to timely file a verified EEOC charge. *Id.* at 481.

**Continuing Tort/Continuing Violation Exception**

"Under Louisiana law, '[w]hen tortious conduct and resulting damages are of a continuing nature, prescription does not begin until the conduct causing the damages is abated.' For the continuous tort doctrine to apply, 'the operating cause of the injury [must] be a continuous one which results in continuous damages.' It does not apply if 'the complained of actions by the defendant were simply the continued ill effects that arose from a single tortious act.'" *Williams v. Otis Elevator Co.*, 557 Fed. App'x. 299, 301-02 (5th Cir. 2014) (quoting *First Nat'l Bank v. Smith*, 29-350, p. 4 (La.App. 2 Cir. 4/2//97); 691 So.2d 355, 358; *Crump v. Sabine River Auth.*, 98-2326, p. 7 (La.6/29/99); 737 So.2d 720, 726; *Cooper v. La. Dep't of Pub. Works*, 03-1074, p. 6 (La.App. 3 Cir. 3/3/04); 870 So.2d 315, 323 (citing *Crump*, 737 So.2d at 728-29)).

"The continuing violation theory typically applies to hostile work environment claims." *Notariano v. Tangipahoa Par. Sch. Bd.*, 266 F.Supp.3d 919, 924 (E.D. La. 2017), *reconsideration denied*, No. CV 16-17832, 2018 WL 117 2959 (E.D. La. Mar. 6, 2018) (citing *Johnson v. Fluor Corp.*, 181 F.Supp.3d 325 (M.D. La. 2016)). "'Unlike in a case alleging discrete violations, a hostile environment plaintiff is not limited to filing suit on events that fall within this statutory time period because her claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice.'" *Id.* (quoting *Johnson*, 181 F.Supp.3d 325). "'A continuing violation involves repeated conduct, and cannot be said to occur on any particular day. It instead occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.'" *Id.* (quoting *Jurach v. Safety Vision, LLC*, 72 F.Supp.3d 698, 707 (S.D. Tex. 2014), aff'd, 642 Fed. App'x. 313 (5th Cir. 2016) (internal quotations omitted)).

The Fifth Circuit has explained the continuing violations doctrine this way:

> [The Fifth Circuit] has consistently held that the continuing violations doctrine is equitable in nature and extends the limitations period on otherwise time barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts. *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003); *see also Huckabay v. Moore*, 142 F.3d 233, 238-39 (5th Cir. 1998). Under the continuing violations doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. *Felton v. Polles*, 315 F.3d 470, 487 (5th Cir. 2002) (citing

*Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997)). The end goal of the continuing violation theory is to 'accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all of the discriminated acts committed as part of this pattern or policy can be considered timely.' *Celestine v. Petroleos de Venezuela SA,* 266 F.3d 343, 352 (5th Cir. 2001); *see also Hardin v. S.C. Johnson & Son Inc.,* 167 F.3d 340, 344 (7th Cir. 1999).

*Pegram v. Honeywell, Inc*., 361 F.3d 272, 279 (5th Cir. 2004).

As the Eastern District has explained:

There are several limits on the applicability of the continuing violations doctrine, including:

(1) the plaintiff must demonstrate that the separate acts are related; (2) the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it; and (3) the doctrine may be tempered by the court's equitable powers, which must be exercised to 'honor Title VII's remedial purpose without negating the particular purpose of the filing requirement.'

*Notariano*, 266 F.Supp.3d at 924 (quoting *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.,* 850 F.3d 731, 738 (5th Cir. 2017), as revised (Mar. 13, 2017)).

Moreover, as this Court has explained:

This 'doctrine does not automatically attach in hostile work environment cases, and the burden remains on the employee to demonstrate an organized scheme led to and included the present violation.' *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 351 (5th Cir. 2001) (citing *Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997)) (emphasis added). Further, the doctrine 'requires the same type of discriminatory acts to occur both inside and outside the limitations period,' such that a valid connection exists between them. *Id.* (quoting *Martineau v. ARCO Chem. Co*., 203 F.3d 904, 913 (5th Cir. 2000)).

*Price v. PCS Nitrogen Fertilizer, L.P*., Civ.A. 03-153-RET-DLD, 2010 WL 1005181, at *4 (M.D. La. Mar. 15, 2010).

"Discrete adverse actions, although racially motivated, cannot be lumped together with the day-to-day pattern of racial harassment and therefore, if otherwise untimely, cannot be saved by the continuing violation doctrine." *Boyd v. Trinity Industries, Inc.,* CIV.A. 14-00469-SDD, 2015

WL 3969464, at *2 (M.D. La. June 30, 2015) (citing *Mayes v. Office Depot, Inc.*, 292 F.Supp.2d 878, 888 (W.D. La. 2003)); *see also Pegram*, 361 F.3d at 280.

The Fifth Circuit has held "that a 'three year break' will defeat any attempt to establish a continuing violation." *Butler v. MBNA Tech., Inc.*, 111 Fed. App'x. 230, 234 (5th Cir. 2004) (citing *Felton*, 315 F.3d at 486).

### "Single File" or "Piggyback" Rule/Exception

The Fifth Circuit Court of Appeals explained the "single file" or "piggybacking" rule as follows:

> [The Fifth Circuit] ha[s] recognized that '[i]t would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC. If it is impossible to reach a settlement with one discriminatee, what reason would there be to assume the next one would be successful[?]' One such situation in which [the Fifth Circuit] ha[s] relaxed the Title VII filing requirement arises when a non-filing party wishes to piggyback his judicial action on the claim of a party who followed the administrative procedures. This Circuit has held that 'in an action involving claims of several persons arising out of similar discriminatory treatment, not all of them need to have filed EEOC charges as long as one or more of the plaintiffs had satisfied the requirement.'[1] In *Oatis v. Crown Zellerbach Corp.*, we held that it is not necessary for each member of a class to file an EEOC charge as a prerequisite to join a Title VII suit as long as at least one named plaintiff had filed such charges.[2] *Wheeler v. American Home Products Corp.* extended *Oatis* to non-class suits, holding that similarly situated intervenors who had not filed EEOC charges could maintain a Title VII claim if the original plaintiffs had filed timely charges.[3] In both *Oatis* and *Wheeler*, this Court held that certain eligible parties were excused from filing an EEOC charge when they were permitted to join or intervene in a lawsuit in which the original, similarly situated plaintiff had fully exhausted the administrative requirements.
>
> This Circuit further explained the piggyback concept in *Bettcher v. The Brown Schools, Inc.*, in which [the Fifth Circuit] stated that the 'single filing rule' is a 'carefully limited exception' that allows parties to 'opt-in to a suit filed by any similarly situated plaintiff under certain conditions.'[4] In *Bettcher*, this Circuit would not allow a plaintiff to piggyback on the EEOC charge filed by a fellow employee who had received a right-to-sue notice from the EEOC but decided not

---

[1] *Crawford v. United States Steel Corp., et al.*, 660 F.2d 663, 665 (5th Cir. 1981).
[2] *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 499 (5th Cir. 1968).
[3] *Wheeler v. American Home Products, Corp.*, 582 F.2d 891, 897 (5th Cir. 1977).
[4] *Bettcher v. The Brown Schools, Inc.*, 262 F.3d 492, 493-94 (5th Cir. 2001) (citing *Anson v. Univ. Texas Health Science Ctr.*, 962 F.2d 539, 540 (5th Cir. 1992).

to file suit. The Court explained that there are three conditions that must be satisfied before a plaintiff may invoke the single filing rule:

> First, the plaintiff must be similarly situated to the person who actually filed the EEOC charge. Second, the charge must have provided some notice of the collective or class-wide nature of the charge. Finally, a prerequisite – implicit to be sure – for piggybacking under the single filing rule is the requirement that the individual who filed the EEOC charge must actually file a suit that the piggybacking plaintiff may join.[5]

*Price v. Choctaw Glove & Safety Co., Inc*., 459 F.3d 595, 598-99 (5th Cir. 2006).

Moreover, in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Supreme Court held that "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id*. at 554. "Tolling, however, does not continue indefinitely. If the district court denies certification, or if it certifies the class but later decertifies it, tolling ceases." *Odle v. Wal-Mart Stores, Inc*., 747 F.3d 315, 320 (5th Cir. 2014). "At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983).

The single filing rule under Fifth Circuit caselaw operates to bar "piggybacking" on others' claims and allegations after filing an independent suit. In *Nelson v. Shoney's Inc*., Civ. A. No. 96-2199, 1997 WL 567957, at *5 (E.D. La. Sept. 10, 1997), the court held that Ms. Nelson could not raise a federal claim for race discrimination or retaliation because she failed to raise these claims in her EEOC charge. *Id*. The court stated, "Because Ms. Nelson had filed her own EEOC charge, she cannot take advantage of the 'single filing rule'". *Id*. *See also Wesley v. Yellow Transp., Inc*., 3:05-CV-2266-D, 2008 WL 294526, at *5 (N.D. Tex. 2008) (finding the single filing rule "does not apply where the respective plaintiffs filed separate EEOC charges and separate lawsuits"). Indeed, the Fifth Circuit has stated:

> Once the charge is filed, unless it is permissibly modified, the EEOC and the employer are entitled to rely on the allegations contained therein. To allow a plaintiff to file an EEOC charge, file suit upon that charge and then, at the eleventh hour, when the statute of limitations has run, to amend his complaint in reliance on the charge of another belies the policies behind the single filing rule and controverts congressional intent. The employee, by failing to assert a particular allegation in his charge, has necessarily excluded himself from the class of persons purportedly covered by the charge of another. As a result, the EEOC and the employer are

---

[5] *Id.* at 494 (internal citations omitted).

> given no notice and no opportunity to remedy his complaint. He is bound by the
> parameters of his own EEOC charge, and cannot subsequently utilize the single
> filing rule to avoid the statute of limitations.

*Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1223 (5th Cir. 1995), *reversed on other grounds*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Because the single filing rule does not allow a plaintiff to amend his complaint to allege the claims of other plaintiffs in unrelated lawsuits, the plaintiff is subject to the general rule, which requires exhaustion of administrative remedies. *See Price*, 459 F.3d at 598 (stating that the piggyback concept is a "carefully limited exception" that allows parties to opt-in to a suit filed by any similarly situated plaintiff under certain conditions). This is also consistent with *Bettcher*, 262 F.3d at 495. There, the court refused to expand the single filing rule to allow a non-charging plaintiff to file a suit based upon the charge of a party that had not filed suit. *Id*. According to the court, such "a reading would allow the single filing exception to consume the statutory rule." *Id.*

    Signed in Baton Rouge, Louisiana, on July 3, 2019.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**