# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CHARLES ADAMS, ET AL. | CIVIL ACTION |
| VERSUS | NO. 98-400-JWD-RLB |
| UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES AND CANADA, AFL-CIO, LOCAL 198, ET AL. | |

## RULING AND ORDER

This matter comes before the Court on *Defendant United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, Local 198's* ("Defendant" or "Local 198") *Motion for Summary Judgment*. (Doc. 639). There are 99 total Plaintiffs (collectively "Plaintiffs"). The motion does not apply to 17 of the 99 Plaintiffs.[1] Pursuant to the Court's Notice Regarding Reasons for Judgment (Doc. 698) and Oral Reasons for Judgment issued on July 16, 2019, 42 of the 99 Plaintiffs have been dismissed,[2] and five of the 99 Plaintiffs have had their claims pursuant to Title VII only dismissed.[3] There are 35 Plaintiffs opposing Defendant's motion, whose claims are the subject of this Ruling. Plaintiffs submitted

---

[1] The following Plaintiffs' claims are not at issue in the subject motion for summary judgment: Charles Adams; Larry Bell; David Dixon; Wayne Dukes; Rayfield Goings; Alfreddie Greensbury; Mannie Henderson; Freddie Jackson; Kenneth Judson; Michael Kyles; Herbert Lavergne; Roberta McDomic; James Miles; Willie Stone; Earl Turner; Alfred Wallace; and Derrick Wicker.

[2] The following Plaintiffs have been dismissed: Jerry Adams; Kenny Adams; Frank Alexander; Mary Barrow; Earnest Bell; Donald Bennett; Lorechia Brown; Rita Curry; Carl Dillon; Cleveland Dyer; Jacqueline Edwards; Wesley Edwards, Jr.; Jill Edwards; George Fountain; Kelvin Freeman; Fred Gice; Jesse Gross; Sam Honore; Johnny Huggins; George Jackson; Lionel Jackson; Wendolyn Johnson; Donald Keller; Clifford Kemp; Linus Lavergne; Ronald Lethermon; Silvester Lethermon; Joseph Payne; Angela Rogers; Napoleon Shriver III; Ronald Smith; Louis Square; Leroy Sterling; Joseph Stone; Larry Stone; Vernon Thomas; Doris White; Frederick Wicker, Jr.; Khristian Wicker; Gladys Wicker; Fredericka Wicker; and Paul Womack.

[3] The following Plaintiffs' claims pursuant to Title VII have been dismissed. Their claims under state law remain pending: Clyde Holliday; Jonas Jacob; Freddie Judson, Jr.; Lionel Richard; and James White.

memoranda in opposition to the motion. (Doc. 646, 648, 660). Defendant replied. (Doc. 654, 668). At the request of the Court, the parties submitted a joint chart documenting the names of the 99 Plaintiffs, whether the motion pertained to him/her, who represents each Plaintiff, and whether the Plaintiff opposes Defendant's motion. (Doc. 685). After a status conference with the Court, the Court ordered supplemental briefing and the submission of a revised, joint chart prior to the Court's ruling on the motion. (Doc. 686). Plaintiffs supplemented their oppositions. (Doc. 687, 688). Defendant replied. (Doc. 693-1). A final, revised chart was jointly submitted. (Doc. 690-1). A brief telephone conference was conducted by the Court to address a few outstanding issues on May 31, 2019. A third chart was jointly submitted by counsel on June 24, 2019. (Doc. 696-1). Oral argument was previously referenced by this Court in its Minute Entry signed April 12, 2019, documenting the Court's status conference that took place on April 11, 2019, (Doc. 686); however, the Court finds that oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion is granted in part and denied in part.

## I. Relevant Factual Background

### A. Introduction

This case arises out of Local 198's alleged violations of: (1) the Civil Rights Act of 1866 pursuant to 42 U.S.C. 1981; (2) Louisiana state law for acts of racial discrimination pursuant to La. Rev. Stat. 23:332(C)(1) and (2) and (D); (3) Louisiana state law for acts of negligence, gross negligence and/or willful and wanton negligence; and (4) Title VII of the Civil Rights Act of 1964 pursuant to 42 U.S.C. § 2000e. Defendant's motion for summary judgment is limited to the sole issue of the timeliness of Plaintiffs' claims. This ruling addresses 35 of the 99 Plaintiffs' claims.[4]

---

[4] This ruling addresses the timeliness on the following Plaintiffs' claims: Vernon Ashford; Kenny Bell; Gary Bennett; Willie Brown; Edward Buggage; Frank Cage; Yvonne Catherine; Umeca O'Connor; Corey Catherine; Joseph Collins;

## B.      Plaintiffs' Claims and Procedural Background

Various Plaintiffs[5] filed a "Class Action Complaint" on May 1, 1998.  (Doc. 1).  The proposed class of Plaintiffs are all African Americans who: are or have been members of the Local 198; have sought and been denied membership in the Local 198; have been or are currently enrolled in the Local 198's apprenticeship program; or have sought admittance and been denied admission to the Local 198 apprenticeship training program.  (Doc. 1 at p. 7).  The sole remaining Defendant is Local 198.  Plaintiffs allege that Local 198 discriminates based on race in the following ways: job assignments; job referrals; lay-offs; board leadership; maintaining a hostile work environment; using racial slurs and epithets; training; compensation; hiring; benefits; representation; recalls; job opportunities; retaliation; preventing work in supervisory positions; lack of assistance in disputes and providing defense; and admissions.  (Doc. 1 at pp. 9-19).

On July 28, 1998, Plaintiffs moved to certify the class.  (Doc. 27).  Magistrate Judge Dalby recommended that the action not be certified as a class action on August 31, 1999.  (Doc. 185). The Court adopted this recommendation and denied the motion to certify the class on October 29, 1999.  (Doc. 196).

The Court ordered a discovery deadline of March 29, 2002.  (Doc. 224).

---

Leo Davis; Earnest Ford, Sr.; Lee Fox; Darryl Freeman; Larry Freeman; Jason Lee; Kayla Benoit; Kimla Gatlin; Andre Gatlin; Kevin Gauthier; Larry Gilmore; John Green; George Hilliard; Michael Jackson; Earnest Johnson; Carl Judson; Ivan Morgan; Sam Parker; Donald Robertson; Michael Robertson; James Snowden; Charles Taylor, Sr.; Dennis Taylor; David West; and Tommie Williams.

[5] The original Plaintiffs are: Charles Adams; Jerry Adams; Kenny Adams; Vernon Ashford; Mary Barrow; Kenny Bell; Donald Bennett; Lorechia Brown; Frank Cage; Yvonne Catherine; Umeca O'Conner; Corey Catherine; Rita Curry; Leo Davis; Carl Dillon; David Dixon; Cleveland Dyer; Lee Fox; Darryl Freeman; Kelvin Freeman; Larry Freeman; Kevin Gauthier; Fred Gice; Larry Gilmore; Rayfield Goings; John Green; Alfreddie Greensbury; Mannie Henderson; George Hilliard; Sam Honore; Johnny Huggins; Michael Jackson; Jonas Jacob; Wendolyn Johnson; Clifford Kemp; Michael Kyles; Herbert Lavergne; Linus Lavergne; Ronald Lethermon; Silvester Lethermon; James Miles; Sam Parker; Lionel Richard; Donald Robertson; Angela Rogers; Larry Stone; Willie Stone; Vernon Thomas; Earl Turner; Alfred Wallace; Doris White; James White; Frederick Wicker, Jr.; Khristian Wicker; Gladys Wicker; Fredericka Wicker; and Tommie Williams.  (Doc. 1).

Plaintiffs amended their original complaint on July 27, 2001, adding additional Plaintiffs.[6] (Doc. 227). Two additional amending complaints were filed on December 3, 2001, naming additional Plaintiffs.[7] (Doc. 274, 283). On February 14, 2002, Plaintiffs amended the complaint again, naming additional Plaintiffs.[8] (Doc. 335). Plaintiffs were added in the amended complaint filed on November 4, 2002,[9] (Doc. 493). A final amended complaint was filed on April 15, 2003, (Doc. 518); however, no new Plaintiffs were named in the final amendment.

The Court conducted a status conference on April 26, 2018, at which time counsel for some Plaintiffs, Mr. Wilson, expressed a concern that many of the Plaintiffs' claims were untimely. At that time, all parties agreed to address the issue of timeliness. (Doc. 625). The Court also determined that it was appropriate for the parties to exchange information to assist the parties in evaluating the timeliness of certain Plaintiffs' claims. (Doc. 630). The Court did not extend the previously ordered discovery deadline and did not set a new discovery deadline associated with the briefing related to timeliness. The Court ordered deadlines for parties to brief the issue of timeliness. (Doc. 632).

## II.    Relevant Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its

---

[6] The newly-named Plaintiffs are: Frank Alexander; Earnest Bell; Edward Buggage; Joseph Collins; Jacqueline Edwards; Wesley Edwards, Jr.; Jill Edwards; Earnest Ford, Sr.; Jason Lee; Kayla Benoit; Kimla Gatlin; Andre Gatlin; Jesse Gross; Freddie Jackson; George Jackson; Lionel Jackson; Earnest Johnson; Carl Judson; Kenneth Judson; Ivan Morgan; Joseph Payne; Michael Robertson; Napoleon Shriver III; Louis Square; Joseph Stone; Charles Taylor, Sr.; Dennis Taylor; Derrick Wicker; and Paul Womack.
[7] The Plaintiffs named in the amended complaints filed December 3, 2001 are: Larry Bell; Gary Bennett; Clyde Holliday; Donald Keller; Ronald Smith; Leroy Sterling; and David West.
[8] The Plaintiffs named in the February 14, 2002 complaint are George Fountain and Freddie Judson, Jr.
[9] The Plaintiffs named in the November 4, 2002, amended complaint are: Willie Brown; Wayne Dykes; Roberta McDomic; and James Snowden.

opponent must do more than simply show that there is some metaphysical doubt as to the material facts … [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(citations and internal quotations omitted). The party opposing the motion for summary judgment may not sit on his hands, complacently relying on the pleadings. *Weyant v. Acceptance Ins. Co.*, 917 F.2d 209 (5th Cir. 1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. General allegations that fail to reveal detailed and precise facts will not prevent the award of summary judgment. *Walton v. Alexander*, 20 F.3d 1350, 1352 (5th Cir. 1994). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## III.   Discussion

### A.   Parties' Arguments

#### 1.   Defendant's Memorandum in Support (Doc. 639-2)

Defendant's motion is limited in scope to the sole issue of timeliness of Plaintiffs' claims. Defendant argues that: the alleged discriminatory acts occurred outside of the relevant time period to render the Plaintiffs' filing timely; many of the allegations and complaints were not of Local

198's making or having anything to do with Local 198; and/or Plaintiffs were not members or applying to be members of Local 198 at the relevant time period of his/her complaints. (Doc. 639-2 at pp. 8-11).

With respect to Plaintiffs' state law and Section 1981 claims of racial discrimination, Defendant argues that the one-year statute of limitations applies. As such, Plaintiffs' complaints must have arisen or occurred within the year preceding the complaint filing date in which that Plaintiff is named. (Doc. 639-2 at p. 13, citing *Whatley v. Dept. of Education*, 673 F.2d 873, 874 (5th Cir. 1982); *Jones v. Orleans Parish School Bd.*, 679 F.2d 32, 35, 36, (5th Cir. 1982), *on reh'g withdrawn in part*, 688 F.2d 342 (5th Cir. 1982), *cert. denied*, 461 U.S. 951 (1983)).

Additionally, Defendant argues that some of the Plaintiffs were not members of Local 198 or applying for membership to Local 198 during the relevant time period. Defendant further argues that the continuing violation exception does not apply because: (1) this exception cannot apply to give a claim to an individual who was not a member or applying to be a member of the union; and (2) if the alleged discriminatory acts did not occur within one year of filing suit, then the "continuing violation" did not "continue" into the relevant time period and the exception does not revive the stale claim. (Doc. 639-2 at p. 14, citing *Glass v. Petrotecs Chemical Corp.*, 757 F.2d 1554, 1561 (5th Cir. 1985).

Defendant also argues, with regard to the state law claims and Section 1981 claims, that some Plaintiffs did not respond to any discovery in any form and are simply named in a complaint. Therefore, Defendant argues, these Plaintiffs can not make a *prima facie* case, and their claims should be dismissed. (Doc. 639-2 at p. 15).

As to the racial discrimination claims under Title VII, Defendant argues that Plaintiffs' action is time-barred because no alleged discrimination occurred in the 300 days before Plaintiffs

filed the EEOC charge. Further, Defendant argues that only 17 of the Plaintiffs produced notices of EEOC charges and right to sue letters. Therefore, Defendant argues that all but the 17 charging Plaintiffs should be dismissed, and for those charging Plaintiffs, their claims should be dismissed because the alleged discrimination did not occur within 300 days of filing the charge. (Doc. 639-2 at pp. 15-16).

## 2. Plaintiffs' Oppositions (Doc. 646, 648)

Due to representation by varying counsel, Plaintiffs responded to Defendant's motion in groups. One group, represented by Mr. Wilson, responded by first providing a list of Plaintiffs who do not oppose the motion.[10] Plaintiffs represented by Mr. Wilson then argued that Defendant's motion is limited solely to timeliness; therefore, Defendant's argument that Plaintiffs cannot make a *prima facie* case at this stage of discovery and motion practice is mis-placed. (Doc. 646 at pp. 1-2). Finally, Plaintiffs represented by Mr. Wilson argue that "the few remaining Wilson plaintiffs" require more discovery before proceeding.[11]

A second group of Plaintiffs, represented by Ms. Grodner, argues the continuing tort exception. (Doc. 648 at pp. 4-8). Plaintiffs argue that they alleged actions of the Defendant that was a part of its "custom, policy, pattern and practice" and was a series of actions that violated Plaintiffs' rights. (Doc. 648 at p. 5, citing Doc. 1 at p. 23, ¶ 94). Plaintiffs argue that the alleged discriminatory practice occurred before and through the time of filing suit as evidenced by the affidavits of James Miles (Doc. 648-1), Lee Fox (648-2), Charles Adams (648-3), and Rayfield

---

[10] Plaintiffs listed in Mr. Wilson's "Statement of No Opposition" are: Jerry Adams; Vernon Ashford; Earnest Bell; Lorechia Brown; Edward Buggage; Carl Dillon; Wayne Dukes; Cleveland Dyer; Earnest Ford; Darryl Freeman; Kevin Freeman; Clyde Holliday; Sam Honore; Jonas Jacob; Wendolyn Johnson; Ronald Lethermon; Silvester Lethermon; Lionel Richard; Michael Robertson; Napoleon Shriver; Joseph Stone; Larry Stone; Larry Stone; Dennis Taylor; Frederick Wicker; Paul Womack; Frank Alexander; Mary Barrow; Rita Curry; Johnny Huggins; Lionel Jackson; Angela Curry Rogers; Ronald Smith; Vernon Thomas; Doris White; and James White. (Doc. 646 at p. 9).
[11] Plaintiffs arguing that additional discovery is needed are: Larry Gilmore; Clyde Holliday; Jonas Jacob; Earnest Johnson; Carl Judson; Roberta McDomic; Lionel Richard; and James White. (Doc. 646 at pp. 2-7).

Goings (648-4). (Doc. 648 at p. 6). Plaintiffs argue that "all putative class members joined this lawsuit and enjoy the interruptions of prescription through this suit." (Doc. 648 at p. 8).

The second group of Plaintiffs also argue the "single file" rule or "piggyback" exception. (Doc. 648 at pp. 8-13). Plaintiffs direct the Court to specific Plaintiffs who filed EEOC charges and/or received right to sue letters and the record evidence supporting application of the "piggyback" exception. (Doc. 648 at pp. 10-13).

Neither group of Plaintiffs disputed the applicable statutes of limitations as argued by Defendant.

### 3.      Defendant's Reply (Doc. 654)

In reply, Defendant summarizes Plaintiffs' arguments and argues that "plaintiffs never offered a shred of evidence that Local 198 applied the call-back provisions in a discriminatory manner; the affidavits offered do not meet the standards of Rule 56 and should be stricken; the continuous tort rule does not apply unless the plaintiff can point to an act that has taken place within the limitation period; and the piggyback rule is inapplicable here where class certification was denied." (Doc. 654 at p. 2). Defendant also argues that discovery has closed, Plaintiffs have failed to meet their burden; and 42 Plaintiffs remain unaddressed by Plaintiffs. (Doc. 654 at p. 3).

Specifically, Defendant argues that Plaintiffs do not adequately show how or why the continuing tort exception applies. Plaintiffs do not plead with specificity the discriminatory actions or practices of Local 198 or how these actions affected each individual Plaintiff. (Doc. 654 at p. 3). Defendant argues that Plaintiffs do not explain the cases to which they cite and provide no facts to describe what alleged discriminatory practices they are referring to and who is injured by the practices or when. (Doc. 654 at p. 5). Additionally, Defendant argues that the "piggyback" exception does not apply. Since the purported class was not certified, the cases relied

upon by Plaintiffs do not apply; no union filed a charge on behalf of the Plaintiffs; and Plaintiffs' charges did not give timely notice of the alleged practice or nature of the grievance. (Doc. 654 at p. 8).

All memoranda submitted by both Plaintiffs and Defendant individually discuss each Plaintiff, just as the Court does below.

### 4. Charts (Doc. 685, 690-1, 696-1).

Prior to the Court-ordered status conference, the Court requested that the parties jointly submit a chart listing all Plaintiffs by name, whether the Plaintiff was the subject of Defendant's motion, whether the Plaintiff opposed the motion or not, and the basis for same. In accordance with this request, the parties submitted the first chart. (Doc. 685). At the status conference with the Court, it was agreed that the parties would be allowed to amend the chart and submit supplemental briefing on the timeliness issue to the Court. A revised and final chart was submitted. (Doc. 690-1). The parties also supplemented their briefing as set forth below. The parties voluntarily submitted a third joint chart. (Doc. 696-1).

### 5. Plaintiffs' Supplemental Oppositions (Doc. 687, 688, 692)

Plaintiffs represented by Ms. Grodner supplemented their oppositions, many of whom changed his/her position from "opposing" the motion based on application of one or both of the exceptions to "not opposing" the motion. (Doc. 687, 688). All but two of these changes are reflected in the revised, final chart. (Doc. 690-1).[12]

Plaintiffs represented by Mr. Wilson stand by their position on "no opposition" with the exception of two Plaintiffs, Vernon Ashford and Darryl Freeman, whose claims, Mr. Wilson

---

[12] Edward Buggage and Dennis Taylor state in their supplemental opposition that they do not oppose the motion. (Doc. 687at p. 6; Doc. 688 at p. 4). However, the revised, final chart, submitted simultaneously with the supplemental oppositions, reflects that they oppose the motion. (Doc. 690-1). By conference with all parties on May 31, 2019, the Court brought this discrepancy to the parties' attention, believing the chart to be in error.

argues, may be timely in relation to Plaintiff Fox's charge, which Mr. Wilson cannot locate or produce. These two Plaintiffs are the only two Plaintiffs who formerly did not oppose and now "potentially" oppose the motion. (Doc. 692).

### 6. Defendant's Supplemental Reply (Doc. 693-1).

Defendant argues in supplemental reply that despite all submissions, Plaintiffs have "utterly failed" to meet their burden of proof. (Doc. 693-1 at p. 1). Many Plaintiffs give a date of membership, but no dates of alleged discrimination; many Plaintiffs give dates of alleged discrimination but were not members of Local 198 or fail to make a showing of same. Therefore, Defendant argues, Plaintiffs do not meet their burden. It is insufficient to show membership but no alleged discriminatory acts within the relevant time period or to allege discriminatory acts but not show membership in Local 198, argues Defendant. (Doc. 693-1 at p. 2). Defendant re-iterates its previously-made arguments regarding the inapplicability of the argued exceptions since Plaintiffs were not certified as a class. (Doc. 693-1 at p. 5).

### B. Applicable Legal Authority

### 1. State Law Claims of Racial Discrimination

Louisiana Revised Statute 23:303 provides, in relevant part:

D. Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months.

*See Williams v. Otis Elevator Co.*, 557 Fed. App'x. 299, 302 (5th Cir. 2014).

Thus, the Louisiana Employment Discrimination Law ("LEDL") has a one-year prescriptive period. La. Rev. Stat. 23:303(D); *Bellow v. Bd. of Sup'rs of Louisiana State Univ. &*

*Agr. & Mech. Coll.*, 913 F.Supp.2d 279, 289 (E.D. La. 2012), *aff'd in part sub nom. Bellow v. LeBlanc*, 550 Fed. App'x. 181 (5th Cir. 2013); *Nabors v. Metro. Life Ins. Co.*, No. 12-827, 2012 WL 2457694, at *3 (citing La. R.S. 23:303(D)). "Under Louisiana law, prescription statutes are strictly construed against prescription and in favor of the claim sought to be extinguished; thus, a construction that favors maintaining an action rather than barring it should usually be adopted." *Nabors*, 2012 WL 2457694, at *4 (citations and quotations omitted). "Ordinarily, the burden of proof is on the party pleading prescription; however, when the plaintiff's petition has clearly prescribed on its face the burden shifts to the plaintiff to prove that prescription has been suspended or interrupted." *Id*. (citations and quotations omitted).

The prescriptive period "begins to run on the date that the discrimination occurs." *Nabors*, 2012 WL 2457694, at *3; *see also Bellow*, 913 F.Supp. at 289 ("Prescription under the statute commences on the day that the termination occurred."). "[T]his one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights." La. Rev. Stat. 23:303(D). "No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months." *Id*. "Therefore, the total amount of time that a plaintiff has to bring a claim under Louisiana Revised Statute 23:322 is eighteen months." *Bellow*, 913 F.Supp.2d at 289; *see also Nabors*, 2012 WL 457694, at *3 ("Consequently, the LEDL requires a plaintiff to file suit on his discrimination claim no later than eighteen months after the occurrence forming the basis for the claim." (citations omitted)).

### 2. Negligence Claims

"Generally, prescription statutes are strictly construed against prescription and in favor of the claim sought to be extinguished by it; thus, of two possible constructions, that which favors maintaining, as opposed to barring an action, should be adopted." *Wells v. Zadeck*, 2011-1232 (La. 3/30/12); 89 So. 3d 1145, 1149 (citing *Carter v. Haygood*, 04–0646 (La. 1/19/05); 892 So. 2d 1261, 1268; *Bailey v. Khoury*, 04–0620 (La. 1/20/05); 891 So. 2d 1268). Further, ordinarily, the party raising the defense of prescription bears the burden of proof. *Wells*, 89 So. 3d at 1149 (citing *Campo v. Correa*, 01–2707, p. 7 (La. 6/21/02); 828 So.2d 502, 508). "However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed." *Wells*, 89 So. 3d at 1149 (citing *Campo*, 01–2707 at p. 7; 828 So.2d at 508; *Williams v. Sewerage & Water Bd. of New Orleans*, 611 So.2d 1383, 1386 (La. 1993)).

Louisiana Civil Code article 3492 states that "[d]elictual actions are subject to a liberative prescription of one year," and "[t]his prescription commences to run from the day injury or damage is sustained." La. Civ. Code art. 3492. Article 3467 further provides, "Prescription runs against all persons unless exception is established by legislation." La. Civ. Code art. 3467.

### 3.    Claims pursuant to 42 U.S.C. § 1981

Defendant argues that the applicable prescriptive time period to Plaintiffs' claims pursuant to 42 U.S.C. § 1981 is one year. Plaintiffs offer no argument or disagreement with this time period. However, this is incorrect.

Section 1981 does not contain a statute of limitations. *See Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 371, 124 S.Ct. 1836, 1839 (2004). When a federal statute does not contain a statute of limitations, courts should apply "the most appropriate or analogous state statute of limitations." *Id.* Under Louisiana law, "[a] section 1981 claim is best characterized as a tort ... and is, therefore, governed by the one-year prescriptive period for delictual actions dictated by

[Louisiana Civil Code article] 3492." *Taylor v. Bunge Corp.*, 775 F.2d 617, 618 (5th Cir.1985). However, for actions arising under federal statutes enacted after December 1, 1990, courts must apply a catchall four-year statute of limitations. *See* 28 U.S.C. § 1658 ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.").

Section 1981 was originally enacted as part of the Civil Rights Act of 1866 and covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Patterson v. McLean Credit Union,* 491 U.S. 164, 179, 109 S.Ct. 2363, 2374 (1989). Section 1981 "did not protect against harassing conduct that occurred after the formation of the contract." *Jones,* 541 U.S. at 372, 124 S.Ct. at 1840 (citing *Patterson,* 491 U.S. 164, 109 S.Ct. 2363). Section 1981 was later amended by the Civil Rights Act of 1991 to create a cause of action for discriminatory and retaliatory conduct occurring after the formation of the contract. *See id.* Thus, the applicable statute of limitations depends upon whether the claim was actionable under the older version of section 1981 or is only made possible by the 1991 amendments. *See id.* at 382, 124 S.Ct. at 1845. Where the plaintiff's claim was available under the original section 1981, the court must apply the analogous state statute of limitations, which in Louisiana is one year. *See id.* at 371, 124 S.Ct. at 1839; *Taylor,* 775 F.2d at 618. However, where the claim is only available under section 1981 as amended, the cause of action is said to "arise under" the Civil Rights Act of 1991 and the federal four-year statute of limitations provided by section 1658 applies. *See Jones,* 541 U.S. at 382, 124 S.Ct. at 1845.

This Court has previously explained that:

Section 1981 does not contain a limitations period. Section 1981 employment discrimination claims that are based on conduct occurring *after* the formation of a

> contract have a four year statute of limitations under 28 U.S.C. § 1658(a). *Jones v. R.R. Donnelley & Sons Co*., 541 U.S. 369, 124 S.Ct. 1836 (2004); *Johnson v. Crown Enterprises, Inc*., 398 F.3d 339, 341 (5th Cir. 2005). Whereas, a claim cognizable under § 1981 *before* it was amended by the Civil Rights Act of 1991, such as a claim based on the failure to enter into a new contract, is governed by the relevant state personal injury limitations period[.] … Under the pre-1991 version of § 1981 a failure to promote claim was actionable if the promotion rose to the level of an opportunity for a new and distinct relation between the employee and the employer. *Blanson v. Graphic Packaging International, Inc.*, 2007 WL 438193 (W.D. La. Jan. 9, 2007), citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 2377 (1989).

*Hubert v. City of Baton Rouge/Parish of E. Baton Rouge, Dep't of Pub. Works*, No. CIV.A. 08-515-SCR, 2009 WL 774343, at *1 (M.D. La. Mar. 20, 2009).

Here, Plaintiffs are claiming racial discrimination based on alleged conduct that occurred during their apprenticeship or membership with Local 198; therefore, Plaintiffs' claims arose under the Civil Rights Act of 1991 and the federal four-year statute of limitations applies. *See also, Balakrishnan v. Board of Sup'rs of Louisiana State Univ. and Agr. And Mech. College*, 2009 WL 2175974, *6-7 (E.D. La. July 21, 2009) (where the four-year statute of limitations applied to claims of racial discrimination under Section 1981).

### 4. Claims of Racial Discrimination under Title VII

Under Title VII, "[a] private plaintiff must exhaust [his] administrative remedies by timely filing a charge with the EEOC and receiving a right-to-sue notice before seeking relief from the Court." *Williams v. Louisiana*, CV 14-00154-BAJ-RLB, 2015 WL 5318945, at *3 (M.D. La. Sept. 11, 2015) (citing *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378-79 (5th Cir. 2002); 42 U.S.C. § 2000e-5(f)(1)). Generally, "[a] charge under [Title VII] shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1). However, the "time period is extended to proceedings with a State or local agency with

authority to grant or seek relief from such practice[,]'" such as Louisiana. *Conner v. Louisiana Dep't of Health & Hospitals*, 247 Fed. App'x. 480, 481 (5th Cir. 2007).

Under Title VII, "a plaintiff must file a charge of discrimination within 300 days of the alleged discriminatory act." *Harrison v. Estes Express Lines*, 211 F. App'x 261, 264 (5th Cir. 2006) (per curiam) (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Nabors v. Metro. Life Ins. Co.*, No. 12-827, 2012 WL 2457694, at *2-3 (W.D. La. May 30, 2012), *report and recommendation adopted*, No. 12-827, 2012 WL 2427169 (W.D. La. June 26, 2012).

The United States Court of Appeals for the Fifth Circuit has observed that "[o]ne of the central purposes of the employment discrimination charge is to put employers on notice of 'the existence and nature of the charges against them.' " *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878 (5th Cir.2003) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984)). A charge must be "in writing under oath or affirmation," must sufficiently identify the parties, and must generally describe the action or practices that are the basis of the complaint. 42 U.S.C. § 2000e–5(b); 29 C.F.R. § 1601.12(b). Although the governing regulations list specific information that should be contained in each charge, the regulations also provide that "[a] charge may be amended to cure technical defects or omissions," and that such amendments "related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b).

The Fifth Circuit has previously held that "an intake questionnaire that informs the EEOC of the identity of the parties and describes the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge to the respondent is sufficient to " 'set[ ] the administrative machinery in motion.' " *Conner,* 247 Fed.Appx. at 481 (quoting *Price v. Sw. Bell Tel. Co.,* 687 F.2d 74, 78 (5th Cir.1982)). In *Price,* the Fifth Circuit reversed and remanded a grant

of summary judgment for the defendant in a Title VII sex discrimination action in which a *pro se* claimant timely filed an intake questionnaire with the EEOC that did not fulfill all of the technical regulatory requirements of a charge. *Price,* 687 F.2d at 78–79. Notwithstanding the deficiencies of the intake questionnaire relative to the requirements of a charge, the agency still deemed the information provided to be sufficient to take action and notify the defendant. *See id.* at 76. In 2007, the Fifth Circuit reiterated its holding in *Price. See Conner,* 247 Fed.Appx. 480. The *Conner* Court reversed and remanded a race and disability discrimination and retaliation action that was dismissed by the district court on the ground that the plaintiff failed to timely file a verified EEOC charge. *Id.* at 481.

### 5. Continuing Tort/Continuing Violation Exception

"Under Louisiana law, '[w]hen tortious conduct and resulting damages are of a continuing nature, prescription does not begin until the conduct causing the damages is abated.' For the continuous tort doctrine to apply, 'the operating cause of the injury [must] be a continuous one which results in continuous damages.' It does not apply if 'the complained of actions by the defendant were simply the continued ill effects that arose from a single tortious act.'" *Williams v. Otis Elevator Co*., 557 Fed. App'x. 299, 301-02 (5th Cir. 2014) (quoting *First Nat'l Bank v. Smith*, 29-350, p. 4 (La.App. 2 Cir. 4/2//97); 691 So.2d 355, 358; *Crump v. Sabine River Auth*., 98-2326, p. 7 (La.6/29/99); 737 So.2d 720, 726; *Cooper v. La. Dep't of Pub. Works*, 03-1074, p. 6 (La.App. 3 Cir. 3/3/04); 870 So.2d 315, 323 (citing *Crump*, 737 So.2d at 728-29)).

"The continuing violation theory typically applies to hostile work environment claims." *Notariano v. Tangipahoa Par. Sch. Bd*., 266 F.Supp.3d 919, 924 (E.D. La. 2017), *reconsideration denied*, No. CV 16-17832, 2018 WL 117 2959 (E.D. La. Mar. 6, 2018) (citing *Johnson v. Fluor Corp*., 181 F.Supp.3d 325 (M.D. La. 2016)). "'Unlike in a case alleging discrete violations, a

hostile environment plaintiff is not limited to filing suit on events that fall within this statutory time period because her claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice.'" *Id*. (quoting *Johnson*, 181 F.Supp.3d 325). "'A continuing violation involves repeated conduct and cannot be said to occur on any particular day. It instead occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.'" *Id*. (quoting *Jurach v. Safety Vision, LLC*, 72 F.Supp.3d 698, 707 (S.D. Tex. 2014), aff'd, 642 Fed. App'x. 313 (5th Cir. 2016) (internal quotations omitted)).

The Fifth Circuit has explained the continuing violations doctrine this way:

> [The Fifth Circuit] has consistently held that the continuing violations doctrine is equitable in nature and extends the limitations period on otherwise time barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts. *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003); *see also Huckabay v. Moore*, 142 F.3d 233, 238-39 (5th Cir. 1998). Under the continuing violations doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, *one or more of which falls within the limitations period*. *Felton v. Polles*, 315 F.3d 470, 487 (5th Cir. 2002) (citing *Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997) (emphasis added)). The end goal of the continuing violation theory is to 'accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period *into the statutory limitations period*, so that all of the discriminated acts committed as part of this pattern or policy can be considered timely.' *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 352 (5th Cir. 2001) (emphasis added); *see also Hardin v. S.C. Johnson & Son Inc.,* 167 F.3d 340, 344 (7th Cir. 1999).

*Pegram v. Honeywell, Inc*., 361 F.3d 272, 279 (5th Cir. 2004)(emphasis added).

As the Eastern District has explained:

> There are several limits on the applicability of the continuing violations doctrine, including:

> (1) the plaintiff must demonstrate that the separate acts are related; (2) the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it; and (3) the doctrine may be tempered by the court's equitable powers, which must be exercised to 'honor Title VII's remedial purpose without negating the particular purpose of the filing requirement.'

*Notariano*, 266 F.Supp.3d at 924 (quoting *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.,* 850 F.3d 731, 738 (5th Cir. 2017), as revised (Mar. 13, 2017)).

Moreover, as this Court has explained:

> This 'doctrine does not automatically attach in hostile work environment cases, and the burden remains on the employee to demonstrate an organized scheme led to and included the present violation.' *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001) (citing *Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997)) (emphasis added). Further, the doctrine 'requires the same type of discriminatory acts to occur both inside and outside the limitations period,' such that a valid connection exists between them. *Id.* (quoting *Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 913 (5th Cir. 2000)).

*Price v. PCS Nitrogen Fertilizer, L.P.*, Civ.A. 03-153-RET-DLD, 2010 WL 1005181, at *4 (M.D. La. Mar. 15, 2010).

"Discrete adverse actions, although racially motivated, cannot be lumped together with the day-to-day pattern of racial harassment and therefore, if otherwise untimely, cannot be saved by the continuing violation doctrine." *Boyd v. Trinity Industries, Inc.*, CIV.A. 14-00469-SDD, 2015 WL 3969464, at *2 (M.D. La. June 30, 2015) (citing *Mayes v. Office Depot, Inc.*, 292 F.Supp.2d 878, 888 (W.D. La. 2003)); *see also Pegram*, 361 F.3d at 280.

The Fifth Circuit has held "that a 'three-year break' will defeat any attempt to establish a continuing violation." *Butler v. MBNA Tech., Inc.*, 111 Fed. App'x. 230, 234 (5th Cir. 2004) (citing *Felton*, 315 F.3d at 486).

### 6. "Single File" or "Piggyback" Rule/Exception[13]

The Fifth Circuit Court of Appeals explained the "single file" or "piggybacking" rule as follows:

> [The Fifth Circuit] ha[s] recognized that '[i]t would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC. If it is impossible to reach a settlement with one discriminatee, what reason would there be to assume the next one would be successful[?]' One such situation in which [the Fifth Circuit] ha[s] relaxed the Title VII filing requirement arises when a non-filing party wishes to piggyback his judicial action on the claim of a party who followed the administrative procedures. This Circuit has held that 'in an action involving claims of several persons arising out of similar discriminatory treatment, not all of them need to have filed EEOC charges as long as one or more of the plaintiffs had satisfied the requirement.'[14] In *Oatis v. Crown Zellerbach Corp.*, we held that it is not necessary for each member of a class to file an EEOC charge as a prerequisite to join a Title VII suit as long as at least one named plaintiff had filed such charges.[15] *Wheeler v. American Home Products Corp.* extended *Oatis* to non-class suits, holding that similarly situated intervenors who had not filed EEOC charges could maintain a Title VII claim if the original plaintiffs had filed timely charges.[16] In both *Oatis* and *Wheeler*, this Court held that certain eligible parties were excused from filing an EEOC charge when they were permitted to join or intervene in a lawsuit in which the original, similarly situated plaintiff had fully exhausted the administrative requirements.
>
> This Circuit further explained the piggyback concept in *Bettcher v. The Brown Schools, Inc.*, in which [the Fifth Circuit] stated that the 'single filing rule' is a 'carefully limited exception' that allows parties to 'opt-in to a suit filed by any similarly situated plaintiff under certain conditions.'[17] In *Bettcher*, this Circuit would not allow a plaintiff to piggyback on the EEOC charge filed by a fellow employee who had received a right-to-sue notice from the EEOC but decided not to file suit. The Court explained that there are three conditions that must be satisfied before a plaintiff may invoke the single filing rule:
>
> > First, the plaintiff must be similarly situated to the person who actually filed the EEOC charge. Second, the charge must have

---

[13] This rule/exception is referred to, interchangeably, as "single file", "single filing", "piggyback", or "piggybacking" rule.

[14] *Crawford v. United States Steel Corp., et al.*, 660 F.2d 663, 665 (5th Cir. 1981).

[15] *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 499 (5th Cir. 1968).

[16] *Wheeler v. American Home Products, Corp.*, 582 F.2d 891, 897 (5th Cir. 1977).

[17] *Bettcher v. The Brown Schools, Inc.*, 262 F.3d 492, 493-94 (5th Cir. 2001) (citing *Anson v. Univ. Texas Health Science Ctr.*, 962 F.2d 539, 540 (5th Cir. 1992).

> provided some notice of the collective or class-wide nature of the charge. Finally, a prerequisite – implicit to be sure – for piggybacking under the single filing rule is the requirement that the individual who filed the EEOC charge must actually file a suit that the piggybacking plaintiff may join.[18]

*Price v. Choctaw Glove & Safety Co., Inc.*, 459 F.3d 595, 598-99 (5th Cir. 2006).

Moreover, in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Supreme Court held that "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554. "Tolling, however, does not continue indefinitely. If the district court denies certification, or if it certifies the class but later decertifies it, tolling ceases." *Odle v. Wal-Mart Stores, Inc.*, 747 F.3d 315, 320 (5th Cir. 2014). "At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983).

The single filing rule under Fifth Circuit caselaw operates to bar "piggybacking" on others' claims and allegations after filing an independent suit. In *Nelson v. Shoney's Inc.*, Civ. A. No. 96-2199, 1997 WL 567957, at *5 (E.D. La. Sept. 10, 1997), the court held that Ms. Nelson could not raise a federal claim for race discrimination or retaliation because she failed to raise these claims in her EEOC charge. *Id.* The court stated, "Because Ms. Nelson had filed her own EEOC charge, she cannot take advantage of the 'single filing rule'". *Id. See also Wesley v. Yellow Transp., Inc.*, 3:05-CV-2266-D, 2008 WL 294526, at *5 (N.D. Tex. 2008) (finding the single filing rule "does not apply where the respective plaintiffs filed separate EEOC charges and separate lawsuits"). Indeed, the Fifth Circuit has stated:

---

[18] *Id.* at 494 (internal citations omitted).

> Once the charge is filed, unless it is permissibly modified, the EEOC and the employer are entitled to rely on the allegations contained therein. To allow a plaintiff to file an EEOC charge, file suit upon that charge and then, at the eleventh hour, when the statute of limitations has run, to amend his complaint in reliance on the charge of another belies the policies behind the single filing rule and controverts congressional intent. The employee, by failing to assert a particular allegation in his charge, has necessarily excluded himself from the class of persons purportedly covered by the charge of another. As a result, the EEOC and the employer are given no notice and no opportunity to remedy his complaint. He is bound by the parameters of his own EEOC charge and cannot subsequently utilize the single filing rule to avoid the statute of limitations.

*Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1223 (5th Cir. 1995), *reversed on other grounds*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Because the single filing rule does not allow a plaintiff to amend his complaint to allege the claims of other plaintiffs in unrelated lawsuits, the plaintiff is subject to the general rule, which requires exhaustion of administrative remedies. *See Price*, 459 F.3d at 598 (stating that the piggyback concept is a "carefully limited exception" that allows parties to opt-in to a suit filed by any similarly situated plaintiff under certain conditions). This is also consistent with *Bettcher*, 262 F.3d at 495. There, the court refused to expand the single filing rule to allow a non-charging plaintiff to file a suit based upon the charge of a party that had not filed suit. *Id*. According to the court, such "a reading would allow the single filing exception to consume the statutory rule." *Id.*

### C.    Defendant's Motion to Strike Affidavits

Plaintiffs rely upon four affidavits in support of their argument that the pattern and practice of alleged racial discrimination was continuous and ongoing from the time before suit was filed and after suit was filed. The affidavits are by Plaintiffs James Miles, (Doc. 648-1); Lee Fox, (Doc. 648-2); Charles Adams, (Doc. 648-3); and Rayfield Goings, (Doc. 648-4). All four affidavits are signed, notarized, and dated January 11, 2019. All four affidavits are identical in content with the exception of the name of the affiant. (Doc. 648-1 through 4).

Defendant seeks to strike Plaintiffs' affidavits on the grounds that the affidavits "contain conclusory statements that would be inadmissible at trial". (Doc. 653 at p. 1). Defendant argues that the affidavits simply recite that various paragraphs of the complaint are "true" and that the affiant has personal knowledge of the allegations. Defendant argues that these attestations are inadmissible "because they present conclusory information unsupported by facts; they offer no factual basis for their conclusions" and Defendant questions whether the affiants are competent to testify to the matters stated in their affidavits. (Doc. 653-1 at p. 3).[19]

Plaintiffs oppose Defendant's motion and argue that the only requirement of the affidavits is that they are based on personal knowledge. (Doc. 658 at p. 2). Further, Plaintiffs argue that there is no requirement that affidavits be admissible at trial and "Local 198 is not in a position to speculate as to what testimony this court will or will not admit at trial." (Doc. 658 at p. 2).

The party opposing summary judgment is obliged to set forth specific facts which demonstrate a genuine issue for trial. FRCP 56; Local Rule 56.2. When the nonmovant "fails to direct the Court to specific evidence in the record to controvert the supporting evidence set forth by the [movant] … the fact is deemed admitted pursuant to Local Rule 56.2." *Antoon v. Woman's Hospital Foundation d/b/a Woman's Hospital*, 2012 WL 1094715, *2 (M.D. La. May 30, 2012).

Conclusory statements without proper support do not meet the requirements of Rule 56(e). *See Goodman v. Life Ins. Co. of North America*, 244 F.3d 138 (5th Cir. Dec. 15, 2000)(citing *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 331 (5th Cir. 1998); *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995)("Although we consider the evidence in the light most favorable

---

[19] The Court acknowledges that Defendant also seeks to strike certain statements of Larry Gilmore and Carl Judson contained in their declarations. (Doc. 653-1 at p. 3, citing Doc. 646-1). The statements that Defendant seeks to strike are quoted in their memorandum at Doc. 653-1 at p. 3. The statements, if considered by the Court, only relate to the merits and substance of Plaintiffs' claims. They have no bearing on the issue of timeliness or the instant motion. Therefore, the Court declines to address these specific statements at this time. Defendant may renew this objection in the future, if necessary and warranted. The same applies to Plaintiffs' opposition on regarding these statements. (Doc. 669).

to the nonmoving party, … conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment.")(internal citations omitted); and *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)); *See also Miller Exploration Co. v. Energy Drilling Co.*, 130 F.Supp.2d 781, 785 (W.D. La. Jan. 3, 2001).

"Rule 56(e) requires declarations offered in support of summary judgment to be based on personal knowledge." *Bright v. Ashcroft*, 259 F.Supp.2d 494, 498 (E.D. La. Feb. 11, 2003)(citing Fed.R.Civ.P. 56(e); *Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 530 (5th Cir. 1992)). Rule 602 of the Federal Rules of Evidence further requires a submitting party to lay proper foundation that witnesses have personal knowledge of the matter about which they will testify. "[A] court may strike any affidavit that is not based on personal knowledge." *Bright,* 259 F.Supp.2d 494, 498 (5th Cir. 2003)(citing *Akin*, 959 F.2d at 530; *CMS Indus., Inc. v. L.P.S. Int'l, Ltd.*, 643 F.2d 289, 295 (5th Cir. 1981)). To demonstrate personal knowledge, an affidavit "must include enough factual support to show that the affiant possesses that knowledge." *Thomas v. Atmos Energy Corp.*, 223 Fed.Appx. 369, 374 (5th Cir. 2007).

Here, the affiants attest that they have personal knowledge of each of the specific enumerated paragraphs contained in the complaint. The Court's impression is that Plaintiffs are offering the affidavit testimony of these four Plaintiffs as purported testimonial, evidentiary support for the specific facts set forth in the complaint. While Plaintiffs do not specifically explain how or why they have personal knowledge, one is able to glean from the affidavits that it is knowledge based on their work, experience and/or membership with Local 198. Also, the affidavits largely, generally attest to the purported truthfulness of specific paragraphs in the complaint; however, the affiants elaborate somewhat and provide additional specific information to further support the allegations. For example, each affidavit states: "he has personal experience

of discrimination"; "discrimination was frequent and occurred almost every day"; "the most strenuous jobs were given to African Americans"; "Local 198 caused many African Americans to be unemployed"; and "the work environment was hostile"; many Plaintiff[s] were called 'niggers' on multiple occasions". The affidavits continue in this fashion throughout. (Doc. 648-1 through 4).

While the Court finds that the affidavits could be more specific and detailed factually and could contain a stronger foundation of the affiants' personal knowledge and ability to attest to same at trial, the form of the affidavits is proper, and the substance attempts to provide evidentiary support for allegations in the complaint. The Court notes that the affidavits lend scant support to the issue of timeliness. For example, there are no specific dates, temporal scope or range contained in the affidavits. There is at least one reference to "every day" which assists with the span and reach of the allegations. Also, the consideration of the affidavits in conjunction with the offered evidence as a whole will provide some assistance to the Court in evaluating the timeliness of these 35 Plaintiffs.

For these reasons, the Court denies Defendant's motion to strike the affidavits. The Court will consider the affidavits but only for the limited purpose to assess the timeliness of Plaintiffs' claims. Defendant may re-urge its motion to strike these affidavits, if necessary, if and/or when the issue before the Court is one based on the merits and substance of Plaintiffs' claims.

### D. Analysis

The sole question presented by Defendant's motion is whether Plaintiffs' claims of racial discrimination under state and federal law are timely. Before addressing each Plaintiff individually, the Court acknowledges that Plaintiffs have argued a need for additional discovery prior to any claims being dismissed based on timeliness. The Court rejects this argument. This

matter has been pending since May 1, 1998. (Doc. 1). On June 13, 2001, this Court ordered a discovery deadline of March 29, 2002. (Doc. 224). After that date passed, the Court conducted two status conferences at which time the issue of timeliness and discovery was discussed. The Court noted that a significant amount of time for discovery had already taken place. (Doc. 625). The Court allowed time for the exchange of limited information to facilitate briefing on the timeliness issue. (Doc. 630). The Court stated that discovery would not be discussed again. (Doc. 632). The Court finds that a sufficient amount of time has been extended to the parties for discovery, especially discovery related to the issue of timeliness, which is the sole issue before the Court on this motion.

Based upon the foregoing:

### 1.     Vernon Ashford

Ashford is named in the original complaint filed on May 1, 1998. (Doc. 1). Ashford did not oppose this motion in Plaintiffs' first opposition and is listed on Mr. Wilson's statement of Plaintiffs with no opposition to the motion. (Doc. 646 at p. 9). In the revised chart, Ashford is listed as not opposing the motion. (Doc. 690-1). However, in Wilson's supplemental opposition to the motion, he argues that Plaintiff Lee Fox was the earliest filed EEOC charge, filed in February 1997, and Ashford can "piggyback" on Fox's charge. (Doc. 692 at p. 2). Ashford refers the Court to Fox's Notice of Charge of Discrimination made a part of the record in support of Defendant's motion. (Doc. 639-23). Fox's Charge of Discrimination is dated March 5, 2001, is filed adverse to Local 198, complains of racial discrimination, and provides a date range of alleged discrimination from January 1, 1998 to November 8, 2000. (*Id*. at p. 1).

Defendant, in support of its motion, directs the Court to summary judgment evidence reflecting that Ashford was enrolled in the Local 198 apprenticeship program in 1976; he testified

that he had not been a member for eight to ten years prior to his 2002 deposition, which computes to 1992-1994; he testified that he filed an EEOC charge, yet one has not been produced or located; his last job referral by Local 198 was in 1996; Ashford last paid dues in February 1997, which was effective until August 1997. (Doc. 639-2 at p. 17, citing Doc. 639-12, deposition of Ashford, at pp. 11-13, and Doc. 639-6 at ¶ 25).

In order for Ashford's state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of May 1, 1998. *See Pegram*, 361 F.3d at 279. Ashford attempts to do this by "piggy backing" on Fox's allegations in his Charge of Discrimination, which alleges racial discrimination beginning as early as January of 1998, specifically described as being denied recall due to his race. This time period is within one year of Ashford filing suit.

Ashford must also make some showing of his relationship with Local 198 within the relevant time period. Again, Ashford simply relies upon Fox's Charge of Discrimination which is directed to Local 198. Defendant offered evidence that Ashford's membership lasted until August 1997. (Doc. 639-2 at p. 17, citing Doc. 639-12, deposition of Ashford, at pp. 11-13, and Doc. 639-6 at ¶ 25). In the supplemental opposition filed by Mr. Wilson, he states that Ashford's membership continued to 1996. (Doc. 692 at p. 2). There is no reference to any evidence to support this date. Assuming August 1997 to be correct and the latest date, this means that Ashford was not a member of Local 198 in January 1998, when the alleged racial discrimination began. Therefore, one can assume that even if racial discrimination was taking place by Local 198 beginning in January 1998, Ashford was not a member of Local 198 and was, therefore, not susceptible to being subjected to this alleged behavior.

Ashford's claims under Section 1981 are subject to a four-year prescriptive period. Since Ashford filed suit on May 1, 1998, the evidence must show that the last alleged act of discrimination occurred between May 1, 1994 and May 1, 1998. Based upon Fox's EEOC charge, January 1, 1998 falls within this time period; however, it does not appear that Ashford was a member of Local 198 at this time.

Regarding Ashford's claims of racial discrimination under Title VII, there is no evidence that Ashford filed an EEOC charge. Rather, Ashford attempts to prove exhaustion of administrative remedies and timely filing of suit by "piggybacking" upon Fox's Charge of Discrimination. (Doc. 692). Ashford has not made a showing that he is "similarly situated" to Fox. *See Price*, 459 F.3d at 598-99. Ashford makes general claims of racial discrimination, (Doc. 1), but there is no evidence of specifically being denied recall as Fox complained or of being a member of Local 198 from January 1, 1998 – November 8, 2000. While Fox's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "*No* Blacks have been recalled in the past 300 days," Doc. 639-23 at p. 1 (emphasis added)), and Fox filed suit as a plaintiff named in the original complaint, (Doc. 1), there is no evidence that Ashford meets the first condition to invoke the single filing rule. *See Price*, 459 F.3d at 598-99.

Based on the foregoing, all claims by Vernon Ashford are <u>dismissed with prejudice</u> based on untimeliness.

### 2. Kenny Bell

Bell is named as a plaintiff in the original complaint filed on May 1, 1998. (Doc. 1). He has not given his deposition, responded to written discovery or filed an EEOC charge. Defendant's

basis for moving for summary judgment on the untimeliness of Bell's claims is that Plaintiff cannot meet his burden to make a *prima facie* case.[20]  (Doc. 639-2 at p. 34).

Plaintiffs responded, generally, by arguing, "The summary judgment at this time is limited to prescription and exhaustion.  The Local 198 has gone beyond that with several claims including Kenny Bell …."  (Doc. 648 at p. 20).  In supplemental opposition, Plaintiffs argue, "The summary judgment at this time is limited to prescription and exhaustion.  The Local 198 has gone beyond that with several claims including Kenny Bell …."  (Doc. 687 at p. 9).  This is the full extent of Plaintiffs' opposition on behalf of Kenny Bell.

While Plaintiffs are correct that the subject motion is limited solely to prescription and exhaustion, Defendant has shown an absence of evidence to support the timeliness of Plaintiff's claims.  The burden then shifts to Plaintiffs.  Plaintiffs have failed in their burden to show that there is any genuine issue of material fact for trial regarding the timeliness of these claims. *Matsushita Elec. Indus. Co*., 475 U.S. at 586-87.  Plaintiffs' burden is not satisfied by general, conclusory allegations in the complaint or allegations that are unsubstantiated in the record.  *Little*, 37 F.3d at 1075.  Plaintiffs may not rely on the pleadings.  *Weyant*, 917 F.2d at 209.  General allegations that fail to reveal detailed and precise facts will not prevent the award of summary judgment.  *Walton*, 20 F.3d at 1352.  Simply put, the record is void of any showing of any facts

[20] The Federal Rules of Civil Procedure allow for the dismissal of a plaintiff's claims both as a sanction when the plaintiff fails to comply with discovery orders from the court and on summary judgment due to an absence of record evidence to support plaintiff's claims.  A repeated failure to comply with discovery is evidence of willfulness, and the Fifth Circuit Court of Appeal has ruled that a sanction less than dismissal would be ineffective.  Further, the Fifth Circuit has found that additional time for discovery is not necessary before dismissing a plaintiff's claims on summary judgment.  *See* Fed. R. Civ. P. 37(b)(2); *see also Yazdchi v. American Honda Finance Corp.*, 217 Fed. App'x. 299, 302-303 (5th Cir. 2007) ("Under Rule 37(b)(2) of the Federal Rules of Civil Procedure, a district court may impose 'just' sanctions on a party who fails to comply with a discovery order, including the dismissal of plaintiff's action with prejudice"; dismissing plaintiff's case); *Truck Treads, Inc. v. Armstrong Rubber Co.*, 818 F.2d 427, 429 (5th Cir. 1987)(same).  *See* Fed. R. Civ. P. 56(f); *see also, Reynolds v. New Orleans City*, 272 Fed. App'x. 331, 341 (5th Cir. 2008)(dismissal of a plaintiff's claims on summary judgment due to no evidentiary support for claims without granting additional time for discovery is proper); *see also, Norwood v. City of Mendenhall, Miss.*, 630 Fed. App'x 245, 250 (5th Cir. 2015) (same).  Regardless of the foregoing, any issues regarding discovery or the failure to engage in discovery are not before the Court at this time.

particular to Bell that may show that there is a genuine issue of material fact for trial. There is no record evidence that Bell was a member of Local 198 or the time period of membership; there is no record evidence that Bell was allegedly discriminated against by Local 198 in the relevant time period for his claims. There is no record evidence that Bell exhausted his administrative remedies, filed a charge with the EEOC, received a right to sue letter, or is attempting to "piggyback" on any other named Plaintiff.

For these reasons, all claims by Kenny Bell are <u>dismissed with prejudice</u>.

### 3. Gary Bennett

The same analysis as is applied immediately above for Bell, applies to Bennett. Bennett is named as a plaintiff in the amending complaint filed on December 3, 2001. (Doc. 274, 283). He has not given his deposition, responded to written discovery or filed an EEOC charge. Defendant's basis for moving for summary judgment on the untimeliness of Bennett's claims is that Plaintiff cannot meet his burden to make a *prima facie* case. (Doc. 639-2 at pp. 34-35).

Plaintiffs responded, generally, by arguing, "The summary judgment at this time is limited to prescription and exhaustion. The Local 198 has gone beyond that with several claims including … Gary Bennett…." (Doc. 648 at p. 20). In supplemental opposition, Plaintiffs argue, "The summary judgment at this time is limited to prescription and exhaustion. The Local 198 has gone beyond that with several claims including … Gary Bennett …." (Doc. 687 at p. 9). This is the full extent of Plaintiffs' opposition on behalf of Gary Bennett.

For the same reasons set forth above regarding Kenny Bell, all claims by Gary Bennett are <u>dismissed with prejudice</u>.

### 4. Willie Brown

The same analysis as is applied above for Bell and Bennett, applies to Brown. Brown is named as a plaintiff in the amending complaint filed on November 4, 2002. (Doc. 493). He has not given his deposition, responded to written discovery or filed an EEOC charge. Defendant's basis for moving for summary judgment on the untimeliness of Brown's claims is that Plaintiff cannot meet his burden to make a *prima facie* case. (Doc. 639-2 at pp. 34-35).

Plaintiffs responded, generally, by arguing, "The summary judgment at this time is limited to prescription and exhaustion. The Local 198 has gone beyond that with several claims including … Willie Brown …." (Doc. 648 at p. 20). The same is stated in the supplemental opposition. (Doc. 687 at p. 9). This is the full extent of Plaintiffs' opposition on behalf of Willie Brown.

For the same reasons set forth above regarding Bell and Bennett, all claims by Willie Brown are dismissed with prejudice.

### 5. Edward Buggage

Buggage is named in the first amending complaint filed on July 27, 2001. (Doc. 227). Buggage did not oppose this motion in Plaintiffs' first opposition and is listed on Mr. Wilson's statement of Plaintiffs with no opposition to the motion. (Doc. 646 at p. 9). Ms. Grodner submitted a supplemental opposition on behalf of Buggage and stated that Buggage has no opposition to this motion. (Doc. 687 at p. 6). However, in the revised chart, Buggage remains listed as opposing the motion. (Doc. 690-1). Given the contradiction, this issue was raised at the telephone conference with the Court and all counsel on May 31, 2019. Ms. Grodner agreed to "look into this" and advise the Court. On June 5, 2019, by letter to the Court, Ms. Grodner confirmed that Edward Buggage does not oppose the instant motion. Further, a third chart was submitted reflecting that Buggage does not oppose the instant motion. (Doc. 696-1).

Based upon the record and the applicable law set forth above, as well as the fact that Edward Buggage does not oppose Defendant's motion, the Court finds that Defendant's motion has merit and Edward Buggage's claims are <u>dismissed with prejudice</u>.

### 6. Frank Cage

Cage is a named Plaintiff in the original complaint filed on May 1, 1998.[21]  (Doc. 1).  It is undisputed that Cage was a member of Local 198 at the time of his 2002 deposition; however, Cage testified that his complaints of racial discrimination occurred in the 1980's.  (Doc. 639-2 at p. 18, citing Doc. 639-16 at pp. 11, 26-27; Doc. 648 at p. 13).  Cage has not filed an EEOC charge. (Doc. 687-2 at p. 9).

Plaintiffs opposed Defendant's motion and argued that Cage was a member of Local 198, but did not provide any dates of membership or cite to any supporting evidence of same.  (Doc. 648 at p. 13).  Plaintiffs' sole argument in opposition is, "No where did he say his claims were limited to his membership in the 1980s.  He is entitle[d] to sue [under] the piggy-back rule on exhaustion and his claim was not prescribed under any scenario."  (Doc. 648 at pp. 13-14).

In his supplemental opposition, Cage offered his member biographic information produced by Defendant in discovery purporting to indicate that he was a member of Local 198 in 1999, 2000, and 2001, and his original initiation date was 1979 and his "current initiation date was 1989". (Doc. 687 at p. 2, citing 687-1).  Cage further argues his questionnaire reflects complaints of racial discrimination in job assignments and job referrals.  (Doc. 687 at p. 2, citing Doc. 687-2).  The questionnaire reflects complaints of racial discrimination in job assignments "in 1996", (Doc. 687-

---

[21] Plaintiffs argue in their first opposition to Defendant's motion that Cage is a named plaintiff in the "5th amended complaint."  (Doc. 648 at p. 13, citing Doc. 283 at p. 6).  However, the record reflects that Cage was first named as a plaintiff in the original complaint dated May 1, 1998.  (Doc. 1).

2 at p. 2), and in job referrals "in the 80's".  (Doc. 687-2 at pp. 4, 7).  Cage's questionnaire is dated October 9, 1998.  (Doc. 687-2 at p. 10).

In order for Cage's state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of May 1, 1998.  *See Pegram*, 361 F.3d at 279.  The summary judgment evidence reflects that alleged discriminatory acts occurred in the 1980's and in 1996.  Significantly, Cage states in his questionnaire that he does not have any proof that Local 198 has a general practice of discrimination, (Doc. 687-2 at p. 2), and that he does not claim to have been subjected to a hostile workplace environment.  (Doc. 687-2 at p. 6).  The Court recognizes that Plaintiffs generally argue a continuous, unabated practice of racial discrimination before and after the filing of suit on May 1, 1998, (Doc. 648 at p. 6, citing Doc. 648-1, 648-2, 648-3, 648-4); however, Cage offers evidence and complaints in different timeframes specific to him, and he denies evidence of a general practice of discrimination or hostile work environment.  The same rationale holds true for the two charges filed with the EEOC by Lee Fox (Doc. 639-23) and Earnest Ford (Doc. 639-52) upon which Cage presumably wishes to "piggyback".  Both charge Local 198 with class-wide racial discrimination from January 1998 until as late as May 24, 2001.  (Doc. 639-52).  Cage denies evidence of general practices of discrimination and a hostile work environment, which calls the content of the EEOC charges into question regarding applicability to Cage.  Cage's claims cannot be lumped together with the general claims of ongoing alleged discrimination simply to save his claims by the continuing violation doctrine.  *Boyd*, 2015 WL 3969464, at *2; *Pegram*, 361 F.3d at 280.  The evidence does not support timely claims of alleged discrimination adverse to Cage under state law in the relevant time period.

Cage must also make some showing of his relationship with Local 198 within the relevant time period. Both parties agree that Cage's membership was active in 2002. Cage has offered evidence of membership in 1979, 1989, and 1999-2002. The Court notes that the discovery responses also reflect that Cage's membership had lapsed or become "delinquent" before being renewed in 1999. (Doc. 687-1 at p. 4). It is unclear when the membership delinquency occurred. Therefore, the Court finds that there is a genuine issue of fact regarding whether Cage was a member in Local 198 in 1996-1998.

Cage's claims under Section 1981 are subject to a four-year prescriptive period. Since Cage filed suit on May 1, 1998, the evidence must show that the last alleged act of discrimination occurred between May 1, 1994 and May 1, 1998. Cage specifically alleges discrimination in job assignments in 1996, which falls within this time period, and it is possible that Cage was a member of Local 198 at this time.

Regarding Cage's claims of racial discrimination under Title VII, it is undisputed that Cage did not file a charge with the EEOC. Rather, Cage attempts to prove exhaustion of administrative remedies and timely filing of suit by "piggybacking" upon charges filed by others. Cage's argument does not specifically argue upon which charge Cage attempts to "piggyback"; however, the opposition memoranda generally argue "piggybacking" on Fox's Charge of Discrimination and Earnest Ford's Charge of Discrimination. (Doc. 648 at p. 11, citing Doc. 639-23, 639-52). Fox's charge reflects complaints of racial discrimination by Local 198 from January 1998 to November 8, 2000, and was filed within 300 days on March 5, 2001. Fox claims that he was "denied recall". (Doc. 639-23). Cage must make a showing that he is "similarly situated" to Fox. *See Price*, 459 F.3d at 598-99. Cage makes claims of racial discrimination in job assignments and job referrals, (Doc. 687 at p. 2, citing Doc. 687-2); however, there is no evidence of specifically

being denied recall as Fox complained. Cage does make general claims of racial discrimination, as Fox does, and Cage was a member during the time period referenced in Fox's EEOC charge. Fox's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "*No Blacks have been recalled in the past 300 days*," Doc. 639-23 at p. 1 (emphasis added)) and Fox filed suit as a plaintiff named in the original complaint, (Doc. 1). There is evidence of a genuine issue of material fact as to whether Cage is "similarly situated" to Fox and meets the first condition to invoke the single filing rule. *See Price*, 459 F.3d at 598-99.

Ford's charge reflects complaints of racial discrimination by Local 198 from January 1998 to May 24, 2001, and was filed within 300 days on August 15, 2001. Ford claims that he was "continuously" subjected to unequal treatment, specifically regarding "call-outs" and "call-backs". (Doc. 639-52). Cage must make a showing that he is "similarly situated" to Fox. *See Price*, 459 F.3d at 598-99. Cage makes claims of racial discrimination in job assignments and job referrals, (Doc. 687 at p. 2, citing Doc. 687-2); however, there is no evidence of specifically being discriminated against in "call-outs" and "call-backs" as Ford complained. Cage does make general claims of racial discrimination, as Ford does, and Cage was a member during the time period referenced in Ford's EEOC charge. Ford's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "Blacks, as a class, are similarly discriminated against on a continuous basis," Doc. 639-52 at p. 1) and Ford filed suit as a plaintiff named in the first amending complaint, (Doc. 227). there is no evidence that Cage meets the first condition to invoke the single filing rule. *See Price*, 459 F.3d at 598-99. There is evidence of a genuine issue of material fact as to whether Cage is "similarly situated" to Ford and meets the first condition to invoke the single filing rule. *See Price*, 459 F.3d at 598-99.

Based on the foregoing, Frank Cage's claims pursuant to state law are <u>dismissed with prejudice</u> based on untimeliness. There are genuine issues of material fact as to whether Frank Cage's claims under Section 1981 and Title VII are timely; therefore, Defendant's motion with regard to these claims brought by Frank Cage is <u>denied</u>.

### 7. Yvonne Catherine (1 of 3 heirs of Joseph Catherine)

Catherine is a named Plaintiff in the original complaint filed on May 1, 1998.[22] (Doc. 1). It is undisputed that Catherine was a member of Local 198 at the time of his 2002 deposition. Catherine has not filed an EEOC charge. (Doc. 639-17 at pp. 14,17; Doc. 648 at p. 14; Doc. 687-4 at p. 9). Defendant argues that the evidence reflects Catherine's complaints that Borden Chemical delayed payment to him six to seven years before his 2002 deposition, computing to 1995-1996; that Turner Industries applied its blood pressure policy in an unequal fashion in 1999-2000; that discriminatory practices occurred during his apprenticeship in 1985-89, and recalls were distributed in a discriminatory fashion. (Doc. 639-2 at p. 19, citing Doc. 639-17 at pp. 17-19, 25, 31, 45-46, 54, 62).

Plaintiffs opposed Defendant's motion and argued that Catherine "is entitle[d] to use the piggy-back rule on exhaustion and his claim was not prescribed under any scenario." (Doc. 648 at p. 14).

In his supplemental opposition, Catherine offered his member biographic information produced by Defendant in discovery purporting to indicate that he was a member of Local 198 in 1999, 2000, and 2001, and his original initiation date was 1989. (Doc. 687 at p. 3, citing Doc. 687-3). Catherine further argues his questionnaire, dated February 21, 1998, reflects complaints

---

[22] Plaintiffs argue that Catherine is named in the "Fifth Amending Complaint", (Doc. 648 at p. 14); however, the record reflects that Catherine is named in the original complaint filed on May 1, 1998. (Doc. 1).

of "systemic race discrimination" and racial discrimination in job assignments and job referrals. (Doc. 687 at p. 3, citing Doc. 687-4). No time period is provided.

In order for Catherine's state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of May 1, 1998. *See Pegram*, 361 F.3d at 279. The summary judgment evidence reflects that alleged discriminatory acts occurred in 1985-1989, 1995-1996, and 1999-2000. (Doc. 639-17 at pp. 17-19, 25, 31, 45-46, 54, 62). In his questionnaire, Catherine states that he has proof that Local 198 has a general practice of discrimination, (Doc. 687-4 at p. 2); that he claims that he was denied a job referral by Local 198 for discriminatory reasons, (Doc. 687-4 at p. 4); that he was denied a job assignment for discriminatory reasons, (Doc. 687-4 at p. 5); that Local 198 failed to defend or adequately represent him for discriminatory reasons, (Doc. 687-4 at p. 6); and that he does *not* claim to have been subjected to a hostile workplace environment, (Doc. 687-4 at p. 6). No dates are provided of these acts, but the questionnaire was signed on February 21, 1998. (Doc. 687-4 at p. 11).

The Court recognizes that Plaintiffs generally argue a continuous, unabated practice of racial discrimination before and after the filing of suit on May 1, 1998, (Doc. 648 at p. 6, citing Doc. 648-1, 648-2, 648-3, 648-4). Also, the two charges filed with the EEOC by Lee Fox (Doc. 639-23) and Earnest Ford (Doc. 639-52) upon which Catherine presumably wishes to "piggyback" charge Local 198 with class-wide racial discrimination from January 1998 until as late as May 24, 2001. (Doc. 639-52). These dates fall within one year of Catherine filing suit. Catherine claims both specific dates of alleged discrimination before and after filing suit and general practices of discrimination within the year of filing suit.

Catherine must also make some showing of his relationship with Local 198 within the relevant time period. Both parties agree that Catherine's membership was active in 2002. Catherine has offered evidence of membership in 1985-1989, 1999, 2000, 2001 and 2002. There is no evidence of interruption of membership between 1989 and 1999, and the questionnaire is dated 1998; therefore, there is a genuine issue of material fact as to Catherine's membership status during the relevant time period.

Catherine's claims under Section 1981 are subject to a four-year prescriptive period. Since Catherine filed suit on May 1, 1998, the evidence must show that the last alleged act of discrimination occurred between May 1, 1994 and May 1, 1998. Catherine specifically alleges discrimination in delayed payment in 1995-1996, which falls within this time period, and it is possible that Catherine was a member of Local 198 at this time.

Regarding Catherine's claims of racial discrimination under Title VII, it is undisputed that Catherine did not file a charge with the EEOC. Rather, Catherine attempts to prove exhaustion of administrative remedies and timely filing of suit by "piggybacking" upon charges filed by others. Catherine's argument does not specifically argue upon which charge Catherine attempts to "piggyback"; however, the opposition memoranda generally argue "piggybacking" on Fox's Charge of Discrimination and Earnest Ford's Charge of Discrimination. (Doc. 648 at p. 11, citing Doc. 639-23, 639-52). Fox's charge reflects complaints of racial discrimination by Local 198 from January 1998 to November 8, 2000 and was filed within 300 days on March 5, 2001. Fox claims that he was "denied recall". (Doc. 639-23). Catherine has made a showing that he is "similarly situated" to Fox. *See Price*, 459 F.3d at 598-99. Catherine makes claims of recalls that were distributed in a discriminatory fashion. (Doc. 639-2 at p. 14, citing Doc. 639-17 at pp. 17-19, 25, 31, 45-46, 54, 62). Also, Catherine was a member for a portion of the time span reflected in Fox's

charge. Fox's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "*No* Blacks have been recalled in the past 300 days," Doc. 639-23 at p. 1 (emphasis added)), and Fox filed suit as a plaintiff named in the original complaint, (Doc. 1); therefore, there is evidence to suggest that Catherine meets the conditions to invoke the single filing rule. *See Price*, 459 F.3d at 598-99.

Based on the foregoing, the Court <u>denies</u> Defendant's motion with regard to the claims of Joseph Catherine brought on his behalf by his three heirs.

### 8.    Umeca O'Conner (2 of 3 heirs of Joseph Catherine)

Based on the analysis immediately above for Yvonne Catherine, one of the three heirs of Joseph Catherine, the Court <u>denies</u> Defendant's motion with regard to the claims of Joseph Catherine brought on his behalf by his three heirs, including Umeca O'Conner.

### 9.    Corey Catherine (3 of 3 heirs of Joseph Catherine)

Based on the analysis immediately above for Yvonne Catherine, one of the three heirs of Joseph Catherine, the Court <u>denies</u> Defendant's motion with regard to the claims of Joseph Catherine brought on his behalf by his three heirs, including Corey Catherine.

### 10.    Joseph Collins

Collins is a named Plaintiff in the first amending complaint filed on July 27, 2001. (Doc. 227). Collins has not given his deposition. He completed a questionnaire, dated October 26, 1998, and he responded "no" to every question regarding potential claims of discriminatory acts related to Local 198. (Doc. 639-2 at p. 23, citing Doc. 639-49). However, Collins confirmed that he was a member of Local 198, (Doc. 639-49 at p. 9); that he was the "second black man to join Local 198", (Doc. 639-49 at p. 12); that he believes employers (not Local 198) were responsible for the alleged discrimination, (Doc. 639-49 at p. 10); that some of the Local 198 members "did dislike

blacks", (Doc. 639-49 at p. 12); that supervisors "recalled who they pleased", (Doc. 639-49 at p. 12); and that blacks were never considered for the supervisor positions. (Doc. 639-49 at p. 12). No dates are provided. Collins has not filed an EEOC charge. (Doc. 639-49).

Plaintiffs opposed Defendant's motion and argued that Defendant should not be able to argue that Collins has not provided any dates when Defendant is in control of membership information. (Doc. 648 at p. 17). Plaintiffs make no mention of the lack of dates of discrimination. Collins argues that he "is entitled to use the continuous acts or racial discrimination by the Local 198 that went abatement [sic] since he joined as the second black man and he may also use the piggy-back rule." (Doc. 648 at pp. 17-18).

In order for Collins' state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of July 27, 2001. *See Pegram*, 361 F.3d at 279. The record offered on summary judgment does not reflect any specific dates of alleged discriminatory acts. The Court notes that Collins' questionnaire is dated October 26, 1998; therefore, the alleged acts presumably occurred before that date. Significantly, Collins states in his questionnaire that he does not have any proof that Local 198 has a general practice of discrimination, (Doc. 687-49 at p. 2), and that he does not claim to have been subjected to a hostile workplace environment. (Doc. 687-49 at p. 6). The Court recognizes that Plaintiffs generally argue a continuous, unabated practice of racial discrimination before and after the filing of suit, (Doc. 648 at p. 6, citing Doc. 648-1, 648-2, 648-3, 648-4); however, Collins does not offer evidence and complaints in any timeframe, and he denies a general practice of discrimination or hostile work environment. The same rationale holds true for the two charges filed with the EEOC by Lee Fox (Doc. 639-23) and Earnest Ford (Doc. 639-52) upon which Collins presumably wishes to "piggyback". Both charge Local 198 with

class-wide racial discrimination from January 1998 until as late as May 24, 2001. (Doc. 639-52). Collins denies general practices of discrimination and a hostile work environment, which calls the content of the EEOC charges into question regarding applicability to Collins. Collins' claims cannot be lumped together with the general claims of ongoing alleged discrimination simply to save his claims by the continuing violation doctrine. *Boyd*, 2015 WL 3969464, at *2; *Pegram*, 361 F.3d at 280. The evidence does not support timely claims of alleged discrimination adverse to Collins under state law in the relevant time period.

Collins must also make some showing of his relationship with Local 198 within the relevant time period. Both parties agree that Collins was a member. No dates of membership are provided. Therefore, the Court finds that there is insufficient summary judgment evidence to support that Collins was a member during the relevant time period.

Collins claims under Section 1981 are subject to a four-year prescriptive period. Since Collins filed suit on July 27, 2001, the evidence must show that the last alleged act of discrimination occurred between July 27, 1997 and July 27, 2001. Collins alleges acts of discrimination in his questionnaire, which is dated Oct. 26, 1998 and falls within this time period. It is possible that Collins was a member of Local 198 at this time.

Regarding Collins' claims of racial discrimination under Title VII, it is undisputed that Collins did not file a charge with the EEOC. Rather, Collins attempts to prove exhaustion of administrative remedies and timely filing of suit by "piggybacking" upon charges filed by others. Collins' argument does not specifically argue upon which charge Collins attempts to "piggyback"; however, the opposition memoranda generally argue "piggybacking" on Fox's Charge of Discrimination and Earnest Ford's Charge of Discrimination. (Doc. 648 at p. 11, citing Doc. 639-23, 639-52). Fox's charge reflects complaints of racial discrimination by Local 198 from January

1998 to November 8, 2000, and it was filed on March 5, 2001. Fox claims that he was "denied recall". (Doc. 639-23). Collins must make a showing that he is "similarly situated" to Fox. *See Price*, 459 F.3d at 598-99. Collins generally alleges discriminatory recall practices as Fox complained and may have been a member of Local 198 in the relevant time period. Fox's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "*No* Blacks have been recalled in the past 300 days," Doc. 639-23 at p. 1 (emphasis added)), and Fox filed suit as a plaintiff named in the original complaint, (Doc. 1). There is evidence of a genuine issue of material fact as to whether Collins is "similarly situated" to Fox and meets the first condition to invoke the single filing rule. *See Price*, 459 F.3d at 598-99.

Based on the foregoing, all claims under state law by Joseph Collins are <u>dismissed with prejudice</u> based on untimeliness. There are genuine issues of material fact as to whether Joseph Collins claims under Section 1981 and Title VII are timely; therefore, Defendant's motion with regard to these claims brought by Joseph Collins is <u>denied</u>.

###    11.    Leo Davis

Davis is a named Plaintiff in the original complaint filed on May 1, 1998. (Doc. 1). Defendant states that Davis has not been deposed but responded to the questionnaire, dated November 29, 2001. (Doc. 639-2 at p. 19, citing Doc. 639-19). Davis represents the following in his questionnaire: that Local 198 has a general policy of discrimination, (Doc. 639-19 at p. 2); that he was denied employment for discriminatory reasons, (Doc. 639-19 at p. 2); that he was denied a job referral for discriminatory reasons, (Doc. 639-19 at p. 4); that he was denied training or testing for discriminatory reasons, (Doc. 639-19 at p. 5); that he was denied a job assignment for discriminatory reasons, (Doc. 639-19 at p. 5); that he was harassed for discriminatory reasons, (Doc. 639-19 at p. 6); that he was retaliated against for discriminatory reasons, (Doc. 639-19 at p.

6); that Local 198 failed to defend him for discriminatory reasons, (Doc. 639-19 at p. 6); that he was subjected to a hostile work environment, (Doc. 639-19 at p. 6); that he was not recalled to a job due to discrimination, (Doc. 639-19 at p. 7); that he was prevented from working as a supervisor for discriminatory reasons, (Doc. 639-19 at p. 7); that he was a member of Local 198, (Doc. 639-19 at p. 9); that black members were given the worst assignments and he was a member for eight to ten years and was never recalled, (Doc. 639-19 at p. 12); that he applied for membership in 1976-77 and did not "get in", (Doc. 639-19 at p. 12); that he was laid off in 1978 or 1979 for complaining about discriminatory treatment, (Doc. 639-19 at p. 14); and that he was an apprentice or member from 1974 until 1983, (Doc. 639-19 at p. 16). Davis has not filed an EEOC charge. (Doc. 639-19).

Plaintiffs opposed Defendant's motion and argued that Davis was a member of Local 198 for eight to ten years and "never got a recall and many other racial discriminatory practices covering many years". (Doc. 648 at p. 14, citing Doc. 629-19 at pp. 12-16). Plaintiffs argue that Defendant controls the dates of membership, and it is unfair for Defendant to argue that no dates were provided. (Doc. 648 at p. 14). The questionnaire upon which both parties rely reflects dates of membership from 1974-1983. (Doc. 639-19 at p. 16). Plaintiffs argue that Davis is entitled to argue the piggy-back exception on exhaustion. (Doc. 648 at p. 14).

In his supplemental opposition, Davis offered his member biographic information produced by Defendant in discovery purporting to indicate that he was a member of Local 198 in 2000, and his original initiation date was 2000. (Doc. 687 at p. 3, citing 687-5).

In order for Davis' state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of May 1, 1998. *See Pegram*, 361 F.3d at 279. The summary judgment evidence reflects that Davis was a

member in the 1970's and 1980's; however, there is no evidence of specific dates of alleged discriminatory acts. Davis' questionnaire is dated November 29, 2001; therefore, all alleged acts presumably occurred before that date. The Court also recognizes that Plaintiffs generally argue a continuous, unabated practice of racial discrimination before and after the filing of suit on May 1, 1998, (Doc. 648 at p. 6, citing Doc. 648-1, 648-2, 648-3, 648-4). Davis also avers a practice of discrimination in response to the questionnaire. (Doc. 639-19). The two charges filed with the EEOC by Lee Fox (Doc. 639-23) and Earnest Ford (Doc. 639-52) upon which Davis presumably wishes to "piggyback" charge Local 198 with class-wide racial discrimination from January 1998 until as late as May 24, 2001. (Doc. 639-52). Although there are is no specific evidence of alleged discriminatory acts in May 1997-1998, there are detailed allegations of pervasive discriminatory acts and evidence of same continuing into 2000, when Davis was a member of Local 198 and after Davis filed suit. There are genuine issues of material fact as to whether alleged discrimination adverse to Davis occurred in the relevant time period.

Davis must also make some showing of his relationship with Local 198 within the relevant time period. Davis has offered evidence of membership in 1974-1983, (Doc. 639-19 at p. 16), and 2000, (Doc. 687-5). It is unclear whether Davis was a member of Local 198 for any other years. There are genuine issues of material fact as to whether Davis was a member of Local 198 in the relevant time period.

Davis' claims under Section 1981 are subject to a four-year prescriptive period. Since Davis filed suit on May 1, 1998, the evidence must show that an alleged act of discrimination occurred between May 1, 1994 and May 1, 1998. Davis generally alleges acts of discrimination in his questionnaire that may have occurred in this time period, and it is possible that Davis was a member of Local 198 at this time.

Regarding Davis' claims of racial discrimination under Title VII, it is undisputed that Davis did not file a charge with the EEOC. Rather, Davis attempts to prove exhaustion of administrative remedies and timely filing of suit by "piggybacking" upon charges filed by others. Davis' argument does not specifically argue upon which charge Davis attempts to "piggyback"; however, the opposition memoranda generally argue "piggybacking" on Fox's Charge of Discrimination and Earnest Ford's Charge of Discrimination. (Doc. 648 at p. 11, citing Doc. 639-23, 639-52). Fox's charge reflects complaints of racial discrimination by Local 198 from January 1998 to November 8, 2000, and it was filed on March 5, 2001. Fox claims that he was "denied recall". (Doc. 639-23). Davis has made a showing that he is "similarly situated" to Fox. *See Price*, 459 F.3d at 598-99. Davis makes claims of racial discrimination in recalls, (Doc. 639-19), and was a member in 2000. (Doc. 687-5). Fox's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "*No* Blacks have been recalled in the past 300 days," Doc. 639-23 at p. 1 (emphasis added)), and Fox filed suit as a plaintiff named in the original complaint, (Doc. 1) . Davis meets the conditions to invoke the single filing rule. *See Price*, 459 F.3d at 598-99.

Based on the foregoing, Defendant's motion with regard to the claims of Leo Davis is denied.

### 12.    **Earnest Ford, Sr.**

Ford is a named Plaintiff in the first amending complaint filed on July 27, 2001. (Doc. 227). Defendant argues that Ford was never a member of Local 198. (Doc. 639-2 at p. 28, citing Doc. 639-51 at pp. 12-14). Defendant asserts that Ford's claims of discrimination are related to being denied a job in 1994 after which Local 198 filed a charge against him for working non-union. (Doc. 639-51 at pp. 14-24, 29-30). He filed a charge with the National Labor Relations Board and received compensation. He then filed an EEOC charge of discrimination on August 15,

2001, based on the same incident, claims Defendant. (Doc. 639-2 at p. 28, citing Doc. 639-51 at pp. 13-16). Ford's right to sue letter was issued August 17, 2001; however, Defendant argues that the incidents complained of in his questionnaire occurred before December 14, 1998. (Doc. 639-2 at pp. 28-29, citing Doc. 639-52).

In opposition, Ford relies upon his EEOC charge and questionnaire and argues the continuous tort exception. (Doc. 648 at p. 18, citing Doc. 639-52; Doc. 687 at p. 7).

Ford filed an EEOC Charge of Discrimination on August 15, 2001. He claimed racial discrimination from January 1, 1998 to May 24, 2001. He claimed that he has been "continuously subjected to unequal terms and conditions of employment with regard to 'call-outs' and 'call-backs' due to race". (Doc. 639-52 at p. 1). A Right to Sue letter was issued on August 17, 2001. (Doc. 639-52 at p. 2). Ford attached a "Detailed Account of Occurrence" to his questionnaire. (Doc. 639-52 at p. 4). He claims that he worked a job from March 1992 to July 1992. He claims that "some Local 198" members requested that he quit. In April 1993, a charge was made against him for working non-union. He received a "letter of clearance" in June 1993. In March 1994, he responded to a call-out for workers, and he was told that Local 198 would not accept him. (Doc. 639-52 at p. 4). Ford does not state whether or not he was a member of Local 198.

Ford's questionnaire, dated December 14, 1998, reflects: that he has proof that Local 198 had a general policy of discrimination from March 1992 to July 1992, (Doc. 639-52 at p. 2); that Local 198 had a general practice of discrimination in 1982, (Id.); that he was denied employment with Local 198 based on discriminatory reasons in March 1994, (Id.); that he was denied a job referral for discriminatory reasons in 1982 and 1994, (Doc. 639-52 at p. 4); that he was discriminated against with respect to job referrals, (Doc. 639-52 at p. 5); that he was denied job assignments in 1982 and 1994, (id.); that he was subjected to harassment March 1992-July 1992,

(Doc. 639-52 at p. 6); and that he was retaliated against in the same time period, (id.); that he was not recalled based on discriminatory reasons in 1994, (Doc. 639-52 at p. 12). Again, it is unclear whether Ford was ever a member of Local 198.

In order for Ford's state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of July 27, 2001. *See Pegram*, 361 F.3d at 279. The record offered on summary judgment reflects specific allegations of alleged discriminatory acts in 1982-1994 and 1998-2001 and both specific and general allegations of discriminatory acts from 1982, 1992, and January 1998-May 2001. Therefore, there are specific allegations of alleged discriminatory acts before Ford filed suit and general allegations of acts continuing into the year prior to suit being filed.

Ford must also make some showing of his relationship with Local 198 within the relevant time period. Defendant argues that Ford was never a member of Local 198. No dates of membership are provided. Plaintiffs do not directly address this issue and simply argue that dates of membership are not available. Therefore, there are genuine issues of material fact regarding whether Ford was a member in Local 198 and the time period, if any, of the membership.

Ford's claims under Section 1981 are subject to a four-year prescriptive period. Since Ford filed suit on July 27, 2001, the evidence must show that an alleged act of discrimination occurred between July 27, 1997 and July 27, 2001. Ford generally alleges acts of discrimination in his EEOC charge that may have occurred in this time period, and it is unknown whether Ford was a member of Local 198 at this time.

Regarding Ford's claims of racial discrimination under Title VII, it is undisputed that Ford filed a charge with the EEOC on August 15, 2001. (Doc. 639-52). While the discriminatory acts specifically detailed in Ford's questionnaire took place up to 1994, Ford's EEOC charge provides

a discriminatory time period of 1998 - May 2001. Therefore, the charge appears to be timely filed within 300 days of the alleged acts. Further, the law is clear that a plaintiff must exhaust his administrative remedies *before* seeking relief from the court. *Williams*, 2015 WL 5318945, at *3. Here, Ford filed his EEOC charge less than one month *after* filing suit. Ford is prohibited from "piggy-backing" on another Plaintiff's EEOC charge to salvage his complaint with the Court of racial discrimination, because he filed his own EEOC charge. *Nelson*, 1997 WL 567957, at *5. However, Ford's questionnaire, dated December 1998, informed the EEOC of the identity of the parties and described alleged discriminatory conduct. As the questionnaire was dated December of 1998, it was completed within 300 days of alleged discriminatory actions. *See Price, supra*, and *Conner, supra*. There is a genuine issue of material fact as to the timeliness of Ford's claims under Title VII.

Based on the foregoing, Defendant's motion with regard to Earnest Ford's claims is <u>denied</u>.

### 13. Lee Fox

Fox is a named Plaintiff in the original complaint filed on May 1, 1998. (Doc. 1). Defendant argues that: Fox "pulled his travel card from Local 198" and worked in Ohio from late 1996 until early 1997, (Doc. 639-2 at p. 20, citing Doc. 639-22, at pp. 9, 27); Fox had worked elsewhere for one year and five days after returning from Ohio as of January 12, 1999, (Doc. 639-2 at p. 20, citing Doc. 639-22, p. 7); Fox does not claim any discrimination after late 1996, and all claims of discrimination pre-date his work in Ohio, (Doc. 639-2 at p. 20, citing 639-22 at pp. 27-29, 38); and Fox alleges discrimination with regard to recalls performed by the contractors, (Doc. 639-2 at p. 20, citing 639-22, p 29). Defendant further points out that Fox filed an EEOC charge on March 5, 2001 and received a right to sue letter on March 9, 2001. (Doc. 639-2 at p. 20, citing

639-23).  Defendant argues that although the EEOC charge is dated 2001, it is supported by a questionnaire dated October 12, 1998.  (Doc. 639-2 at pp. 20-21).

In response, Plaintiffs argue that the questionnaire was dated October 1998, but the EEOC charge indicates the discrimination of which he complained occurred beginning January 1, 1998.  (Doc. 648 at p. 14).  Plaintiffs also argue Fox's allegations regarding a general, continuous practice of race discrimination.  (Doc. 648 at p. 15, citing Doc. 639-23).  Plaintiffs also rely upon Fox's affidavit.  (Doc. 648-2).

In Plaintiffs' supplemental opposition, Plaintiff provide Fox's member biographic information indicating that Fox was a member of Local 198 in 1999, 2000, and 2001, with an original initiation date of 1974.  (Doc. 687 at p. 4, citing Doc. 687-6).

Fox filed an EEOC Charge of Discrimination on March 5, 2001.  He claimed that on November 8, 2000 and during the last 300 days, he had been "denied recall because of his race".  He alleges that members were "recalled" on a daily basis, but no blacks were recalled "in the last 300 days". The alleged violation time period is January 1, 1998 through November 8, 2000. (Doc. 639-23 at p. 1).  A Right to Sue letter was issued on March 9, 2001.  (Doc. 639-52 at p. 2).

Fox's questionnaire reflects:  that he has proof that Local 198 had a general policy of discrimination, (Doc. 639-23 at p. 5); that Local 198 had a general practice of discrimination, (*id.*); that he was denied employment with Local 198 based on discriminatory reasons, (*id.*); that he was discriminated against with respect to job referrals, (Doc. 639-23 at p. 8); that he was denied training or testing for discriminatory reasons, (Doc. 639-23 at p. 8); that he was denied job assignments, (*id.*); that he was subjected to harassment, (Doc. 639-23 at p. 9); that he was retaliated against in the same time period, (*id.*); that Local 198 failed to defend him for discriminatory reasons, (*id.*); that he was subjected to a hostile work environment, (*id.*); and that he was not recalled based on

discriminatory reasons, (Doc. 639-23 at p. 10). He represents that he was a member of Local 198. (Doc. 639-23 at p. 12). Fox provides detailed instances of alleged racial discrimination beginning in 1974, and "things haven't changed in 1998". (Doc. 639-23 at pp. 15, 15-23).

In order for Fox's state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of May 1, 1998. *See Pegram*, 361 F.3d at 279. The record offered on summary judgment reflects specific allegations of alleged discriminatory acts in 1974-1998 and 2000. Therefore, there are specific allegations of alleged discriminatory acts before Fox filed suit and allegations of acts continuing into the year prior to suit being filed.

Fox must also make some showing of his relationship with Local 198 within the relevant time period. Fox represented in 1998 that he was a member of Local 198, and he offered evidence of membership 1974, 1999-2001. Defendant does not argue that Fox was not a member at any relevant time period. Therefore, there is sufficient evidence to create a genuine issue of fact as to whether Fox was a member of Local 198 in the relevant time period.

Fox's claims under Section 1981 are subject to a four-year prescriptive period. Since Fox filed suit on May 1, 1998, the evidence must show that an alleged act of discrimination occurred between May 1, 1994 and May 1, 1998. Fox alleges acts of discrimination in his EEOC charge that may have occurred in this time period, and it is alleged that Fox was a member of Local 198 at this time.

Regarding Fox's claims of racial discrimination under Title VII, it is undisputed that Fox filed a charge with the EEOC on March 5, 2001. (Doc. 639-23). It appears that this charge was filed within 300 days of alleged discriminatory acts in November 2000. (*Id.*). While the discriminatory acts specifically detailed in Fox's questionnaire allegedly took place from 1974-

1998, Fox's EEOC charge provides a discriminatory time period of 1998-2001. Therefore, the charge appears to be timely filed within 300 days of the alleged acts. Further, the law is clear that a plaintiff must exhaust his administrative remedies *before* seeking relief from the court. *Williams*, 2015 WL 5318945, at *3. Here, Fox filed his EEOC charge almost three years *after* filing suit. Fox is prohibited from "piggy-backing" on another Plaintiff's EEOC charge to salvage his complaint with the Court of racial discrimination, because he filed his own EEOC charge. *Nelson*, 1997 WL 567957, at *5. Also, Fox's questionnaire, dated October 12, 1998, was completed after suit was filed. There is no evidence that Fox timely attempted to exhaust his administrative remedies before filing suit.

Based on the foregoing, Defendant's motion with regard to Lee Fox's claims under state law and Section 1981 is <u>denied</u>. Fox's claims under Title VII are <u>dismissed with prejudice</u>.

### 14. Darryl Freeman

Freeman is named in the original complaint filed on May 1, 1998. (Doc. 1). Freeman did not oppose this motion in Plaintiffs' first opposition and is listed on Mr. Wilson's statement of Plaintiffs with no opposition to the motion. (Doc. 646 at p. 9). In the revised chart, Freeman is listed as not opposing the motion. (Doc. 690-1). However, in Wilson's supplemental opposition to the motion, he argues that Plaintiff Lee Fox was the earliest filed EEOC charge, filed in February 1997, and Freeman can "piggyback" on Fox's charge. (Doc. 692 at p. 2). Freeman refers the Court to Fox's Notice of Charge of Discrimination made a part of the record in support of Defendant's motion. (Doc. 639-23). Fox's Charge of Discrimination is dated March 5, 2001, is filed adverse to Local 198, complains of racial discrimination, and provides a date range of alleged discrimination from January 1, 1998 to November 8, 2000. (*Id*. at p. 1).

Defendant, in support of its motion, directs the Court to summary judgment evidence reflecting that Freeman was a member of Local 198 from 1978 to 1996; he gave his deposition in 2002; and he testified that he did not file an EEOC charge. (Doc. 639-2 at p. 21, citing Doc. 639-24 at pp. 14, 16).

In order for Freeman's state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of May 1, 1998. *See Pegram*, 361 F.3d at 279. Freeman attempts to do this by "piggy-backing" on Fox's allegations in his Charge of Discrimination, which alleges racial discrimination beginning as early as January of 1998, specifically described as being denied recall due to his race. This time period is within one year of Freeman filing suit.

Freeman must also make some showing of his relationship with Local 198 within the relevant time period. Again, Freeman simply relies upon Fox's Charge of Discrimination which is directed to Local 198. Defendant offered evidence that Freeman's membership lasted until 1996. (Doc. 639-2 at p. 21, citing Doc. 639-24 at pp. 14, 16). In the supplemental opposition filed by Mr. Wilson, he states that Freeman's membership continued to 1996. (Doc. 692 at p. 2). Plaintiffs make no reference to any evidence to support this date. Assuming 1996 to be correct and the latest date, this means that Freeman was not a member of Local 198 in January 1998, when the alleged racial discrimination began. Therefore, one can assume that even if racial discrimination was taking place by Local 198 beginning in January 1998, Freeman was not a member of Local 198 and was, therefore, not susceptible to being subjected to this alleged behavior.

Freeman's claims under Section 1981 are subject to a four-year prescriptive period. Since Freeman filed suit on May 1, 1998, the evidence must show that the last alleged act of

discrimination occurred between May 1, 1994 and May 1, 1998. Based upon Fox's EEOC charge, January 1, 1998 falls within this time period; however, it does not appear that Freeman was a member of Local 198 at this time.

Regarding Freeman's claims of racial discrimination under Title VII, there is no evidence that Freeman filed an EEOC charge at any time. Rather, Freeman attempts to prove exhaustion of administrative remedies and timely filing of suit by "piggy-backing" upon Fox's Charge of Discrimination. (Doc. 692). Freeman has not made a showing that he is "similarly situated" to Fox. *See Price*, 459 F.3d at 598-99. Freeman makes general claims of a pattern or practice of racial discrimination, (Doc. 1), but there is no evidence of specifically being denied recall as Fox complained or of being a member of Local 198 in 1998. While Fox's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "*No* Blacks have been recalled in the past 300 days," Doc. 639-23 at p. 1 (emphasis added)), and Fox filed suit as a plaintiff named in the original complaint, (Doc. 1), there is no evidence that Freeman meets the first condition to invoke the single filing rule. *See Price*, 459 F.3d at 598-99.

Based on the foregoing, all claims by Darryl Freeman are <u>dismissed with prejudice</u> based on untimeliness.

### 15.    Larry Freeman

Freeman is a named Plaintiff in the original complaint filed on May 1, 1998. (Doc. 1). Defendant is seeking to dismiss Freeman's claims of racial discrimination under Title VII only. Defendant argues that Freeman has not produced an EEOC charge or right to sue letter. (Doc. 639-2 at p. 35).

Plaintiffs opposed Defendant's motion and argued that Larry Freeman provided a questionnaire and the "piggy-back" rule should apply. (Doc. 648 at p. 13). Plaintiffs cite to "RD

285, at 17, Ex Z"; however, Doc. 285 is a memorandum in opposition to a prior motion for partial summary judgment, and there are no exhibits, "Z" or otherwise, made a part of the record at that citation.  (Doc. 648 at p. 13, citing Doc. 285 at p. 17).

In his supplemental opposition, Freeman offered his member biographic information produced by Defendant in discovery purporting to indicate that he was a member of Local 198 in 1999, and his original initiation date was 1992 and his "current initiation date was 1993".  (Doc. 688 at p. 2, citing 688-1).

Freeman must make some showing of his relationship with Local 198 within the relevant time period.  Freeman has offered evidence of membership in 1992, 1993 and 1999.  The Court notes that the discovery responses also reflect that Freeman was "expelled" from Local 198 on September 30, 1999.  (Doc. 688-1 at p. 3).  It is unclear whether Freeman was a member in the relevant 1996-1998 time period.  Therefore, there is a genuine issue of fact regarding whether Freeman was a member in Local 198 in the relevant time period.

Regarding Freeman's claims of racial discrimination under Title VII, it is undisputed that Freeman did not file a charge with the EEOC.  Rather, Freeman attempts to prove exhaustion of administrative remedies and timely filing of suit by "piggybacking" upon charges filed by others. Freeman's argument does not specifically argue upon which charge Freeman attempts to "piggyback"; however, the opposition memoranda generally argue "piggybacking" on Fox's Charge of Discrimination and Earnest Ford's Charge of Discrimination.  (Doc. 648 at p. 11, citing Doc. 639-23, 639-52).  Fox's charge reflects complaints of racial discrimination by Local 198 from January 1998 to November 8, 2000.  Fox claims that he was "denied recall".  (Doc. 639-23). Freeman must make a showing that he is "similarly situated" to Fox.  *See Price*, 459 F.3d at 598-99.  Freeman makes general claims of racial discrimination, (Doc1), but there is no evidence in

the record of being denied recall as Fox complained or of being a member of Local 198 in 1998. While Fox's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "*No* Blacks have been recalled in the past 300 days," Doc. 639-23 at p. 1 (emphasis added)) and Fox filed suit as a plaintiff named in the original complaint, (Doc. 1), there is no reliable evidence that Freeman meets the first condition to invoke the single filing rule. *See Price*, 459 F.3d at 598-99.

Ford's charge reflects complaints of racial discrimination by Local 198 from January 1998 to May 24, 2001. Ford claims that he was "continuously" subjected to unequal treatment, specifically regarding "call-outs" and "call-backs". (Doc. 639-52). As set forth above, Freeman has not made a showing that he is "similarly situated" to Ford. *See Price*, 459 F.3d at 598-99. There is no evidence of Freeman specifically being subjected to unequal treatment regarding "call-outs" and "call-backs" as Ford complained or of being a member of Local 198 in 1998. While Ford's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "Blacks, as a class, are similarly discriminated against on a continuous basis," Doc. 639-52 at p. 1) and Ford filed suit as a plaintiff named in the first amending complaint, (Doc. 227), there is no evidence that Freeman meets the first condition to invoke the single filing rule. *See Price*, 459 F.3d at 598-99. Because Freeman does not meet the requirements for the single file rule or "piggyback" rule, there is no record of an EEOC charge filing to render Freeman's filing of his Title VII claims timely.

Based on the foregoing, Larry Freeman's Title VII claims are <u>dismissed with prejudice</u> based on untimeliness. Larry Freeman's claims pursuant to state law and Section 1981 remain pending.

### 16. Jason Lee (1 of 4 heirs of Andre Gatlin)

Lee is a named Plaintiff in the first amending complaint filed on July 27, 2001. (Doc. 227). Jason Lee is one of four heirs of Andre Gatlin, who passed away on August 2, 1999. (Doc. 639-2 at p. 29, citing Doc. 639-53 at p. 6). Gatlin has not filed an EEOC charge. (Doc. 639-2 at p. 29).

Plaintiffs opposed Defendant's motion and argued that Defendant did not provide dates of membership. Plaintiffs argued that Gatlin is entitle[d] to use the piggy-back rule on "the charge and right to sue". (Doc. 648 at p. 18).

In his supplemental opposition, Gatlin offered his member biographic information produced by Defendant in discovery purporting to indicate that he was a member of Local 198 in 1999, and his original initiation date was 1986 and his current initiation date was 1995. (Doc. 687 at p. 8, citing Doc. 687-10). Gatlin further argues his questionnaire, "which was signed on 10/5/1998", reflects complaints of no "call backs" or "call outs", and blacks were not placed in supervisory positions due to race. (Doc. 687 at p. 8, citing "Ex. 8.1"). The Court has reviewed all exhibits submitted with Doc. 687, and the record does not contain an "Ex. 8.1" or a questionnaire for Gatlin.[23] There is no summary judgment evidence to support Gatlin's argument based upon his questionnaire.

In order for Gatlin's state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of July 27, 2001. *See Pegram*, 361 F.3d at 279. The summary judgment evidence reflects that Gatlin passed away in 1999. (Doc. 639-53 at p. 6). Therefore, there can be no alleged acts of discrimination in July 2000 and forward or a showing of Gatlin's membership during this time.

---

[23] There are numerous references by Plaintiffs to documents or exhibits that are not located as noted and/or are not contained in the record. The Court is disinclined to search the record for purported evidence supporting Plaintiffs' argued position. *See United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991)("Judges are not like pigs, hunting for truffles buried in briefs.").

Gatlin must make some showing of his relationship with Local 198 within the relevant time period. Gatlin has offered evidence of membership in 1986, 1995 and 1999. Gatlin passed away in August 1999 and, therefore, his membership ceased at that time. Gatlin was not a member during the relevant time period.

Gatlin's claims under Section 1981 are subject to a four-year prescriptive period. Since Gatlin filed suit on July 27, 2001, the evidence must show that the last alleged act of discrimination occurred between July 27, 1997 and July 27, 2001. Although there is evidence that Gatlin was a member for a portion of this time period, there is no record evidence of alleged acts of discrimination during this time period.

Regarding Gatlin's claims of racial discrimination under Title VII, it is undisputed that Gatlin did not file a charge with the EEOC. Rather, Gatlin attempts to prove exhaustion of administrative remedies and timely filing of suit by "piggybacking" upon charges filed by others. Gatlin's argument does not specifically argue which charge Gatlin attempts to "piggyback" upon; however, the opposition memoranda generally argue "piggybacking" on Fox's Charge of Discrimination and Earnest Ford's Charge of Discrimination. (Doc. 648 at p. 11, citing Doc. 639-23, 639-52). Fox's charge reflects complaints of racial discrimination by Local 198 from January 1998 to November 8, 2000. Fox claims that he was "denied recall". (Doc. 639-23). Gatlin has not made a showing that he is "similarly situated" to Fox. *See Price*, 459 F.3d at 598-99. Although Gatlin was a member of Local 198 for a portion of the time span reflected in Fox's charge, Gatlin has not made specific claims of recalls that were distributed in a discriminatory fashion. Although Fox's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "*No* Blacks have been recalled in the past 300 days," Doc. 639-23 at p. 1 (emphasis added)) and Fox filed suit as a plaintiff named in the original complaint, (Doc. 1); there is insufficient summary

judgment evidence to suggest that Gatlin meets the conditions to invoke the single filing rule. *See Price*, 459 F.3d at 598-99.

Ford's charge reflects complaints of racial discrimination by Local 198 from January 1998 to May 24, 2001. Ford claims that he was "continuously" subjected to unequal treatment, specifically regarding "call-outs" and "call-backs". (Doc. 639-52). Gatlin has not made a showing that he is "similarly situated" to Ford. *See Price*, 459 F.3d at 598-99. While Plaintiffs argue that Gatlin complained of "call backs" and "call outs", there is no summary judgment evidence to support this argument. There is no evidence of Gatlin specifically being subjected to unequal treatment regarding "call-outs" and "call-backs" as Ford complained. While Ford's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "Blacks, as a class, are similarly discriminated against on a continuous basis," Doc. 639-52 at p. 1) and Ford filed suit as a plaintiff named in the first amending complaint, (Doc. 227), there is no evidence that Gatlin meets the first condition to invoke the single filing rule. *See Price*, 459 F.3d at 598-99. Because Gatlin does not meet the requirements for the single file rule or "piggyback" rule, there is no record of an EEOC charge filing to render Gatlin's filing of his Title VII claims timely.

Based on the foregoing, Andre Gatlin's claims, as asserted by his four heirs on his behalf, are <u>dismissed with prejudice</u> based on untimeliness.

### 17.     Kayla Benoit (2 of 4 heirs)

Based on the analysis immediately above for Jason Lee, one of the four heirs of Andre Gatlin, Andre Gatlin's claims, as asserted by his four heirs on his behalf, are <u>dismissed with prejudice</u> based on untimeliness, including Kayla Benoit.

### 18.     Kimla Gatlin (3 of 4 heirs)

Based on the analysis immediately above for Jason Lee, one of the four heirs of Andre Gatlin, Andre Gatlin's claims, as asserted by his four heirs on his behalf, are <u>dismissed with prejudice</u> based on untimeliness, including Kimla Gatlin.

### 19. Andre Gatlin (4 of 4 heirs)

Based on the analysis immediately above for Jason Lee, one of the four heirs of Andre Gatlin, Andre Gatlin's claims, as asserted by his four heirs on his behalf, are <u>dismissed with prejudice</u> based on untimeliness, including Andre Gatlin.

### 20. Kevin Gauthier

Gauthier is a named Plaintiff in the original complaint filed on May 1, 1998. (Doc. 1). Defendant is seeking to dismiss Gauthier's claims of racial discrimination under Title VII only. Defendant argues that Gauthier has not produced an EEOC charge or right to sue letter. (Doc. 639-2 at p. 35).

Plaintiffs opposed Defendant's motion and argued that Kevin Gauthier provided a questionnaire and the "piggy-back" rule should apply. (Doc. 648 at p. 13). Plaintiffs cite to "RD 285, at 17-18, Ex AA"; however, Doc. 285 is a memorandum in opposition to a prior motion for partial summary judgment, and there are no exhibits, "AA" or otherwise, made a part of the record at that citation. (Doc. 648 at p. 13, citing Doc. 285 at p. 17-18).

In his supplemental opposition, Gauthier offered his member biographic information produced by Defendant in discovery purporting to indicate that he was a member of Local 198 in 1999, 2000, and 2001, and his original initiation date was 1980 and his "current initiation date was 1996". (Doc. 688 at p. 2, citing 688-2). Gauthier also argues that he experienced race discrimination by being denied job recalls and call outs and given the "worst and dirtiest jobs". He also claims a "general practice of race discrimination". (Doc. 688 at pp. 2-3, citing Doc. 688-

3). In his questionnaire, Gauthier claims that: he was denied employment for discriminatory reasons, (Doc. 688-3 at p. 2); that he was in the apprenticeship program with Local 198 from 1979-1983 and was denied an apprenticeship in welding, only piping, (Doc. 688-3 at p. 3); that he was denied job referrals, (Doc. 688-3 at p. 4); that he was denied job assignments, (Doc. 688-3 at p. 5); that he was retaliated against, (Doc. 688-3 at p. 6); that Local 198 failed to defend him in 1985, (Doc. 688-3 at p. 6); that he was subjected to a hostile workplace environment in 1985, (Doc. 688-3 at p. 6); and that he "joined back", presumably with Local 198, in May 1997 and he witnessed the "same thing going on". (Doc. 688-3 at p. 11). Gauthier's questionnaire is not signed or dated. (Doc. 688-3).

Gauthier must make some showing of his relationship with Local 198 within the relevant time period. Gauthier has offered evidence of membership in 1979-1983, 1996, 1997, 1999, 2000, and 2001, (Doc. 688 at p. 2, citing 688-2; Doc. 688-3). There is sufficient summary judgement evidence to support a finding that Gauthier was a member of Local 198 in the relevant time period.

Regarding Gauthier's claims of racial discrimination under Title VII, it is undisputed that Gauthier did not file a charge with the EEOC. Rather, Gauthier attempts to prove exhaustion of administrative remedies and timely filing of suit by "piggybacking" upon charges filed by others. Gauthier's argument does not specifically argue upon which charge Gauthier attempts to "piggyback"; however, the opposition memoranda generally argue "piggybacking" on Fox's Charge of Discrimination and Earnest Ford's Charge of Discrimination. (Doc. 648 at p. 11, citing Doc. 639-23, 639-52). Fox's charge reflects complaints of racial discrimination by Local 198 from January 1998 to November 8, 2000. Fox claims that he was "denied recall". (Doc. 639-23). Gauthier must make a showing that he is "similarly situated" to Fox. *See Price*, 459 F.3d at 598-99. Gauthier has shown that he was a member of Local 198 during this time frame, and he also

raises allegations of being denied recall. Fox's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "*No* Blacks have been recalled in the past 300 days," Doc. 639-23 at p. 1 (emphasis added)), and Fox filed suit as a plaintiff named in the original complaint, (Doc. 1). Therefore, there is evidence that Gauthier meets the conditions to invoke the single filing rule. *See Price*, 459 F.3d at 598-99.

Based on the foregoing, Defendant's motion regarding Kevin Gauthier's claims under Title VII only is <u>denied</u>.

### 21.    Larry Gilmore

Gilmore is a named Plaintiff in the original complaint filed on May 1, 1998. (Doc. 1). Defendant argues, and Plaintiffs agree, that Gilmore "let his membership … lapse in 1997" and that he "does not recall filing a charge of discrimination" with the EEOC. (Doc. 639-2 at p. 21, citing Doc. 639-27 at pp. 24-25; Doc. 646 at p. 2). Defendant argues that Gilmore alleged racially derogatory jokes and graffiti in the workplace; however, this occurred before 1997, and Gilmore did not report these events. (Doc 639-2 at pp. 16-17, citing Doc. 639-27 at pp. 96-97, 99, 102).

Plaintiffs opposed Defendant's motion and argued that although Gilmore's membership lapsed in 1997, Defendant did not request a specific date in 1997 when membership lapsed and that this "could have" occurred "after May 1, 1997". (Doc. 646 at p. 2). Also, Gilmore argues that "lapsed" could mean the expiration of dues or the expiration of the six-month grace period after dues expire. (Doc. 646 at p. 3). However, Gilmore does not argue or provide evidence of the specific dates that Defendant arguably could have elicited.

Further, Plaintiffs offer the declaration of Larry Gilmore wherein he attests that: he "believes" that he "bought [his] book back" after his deposition but he cannot provide the date; after returning to Local 198, he experienced "much of the same type of job referral discrimination

as … before [his] deposition"; jobs were "going to whites 'under the table', but he cannot "point to any specific instances".  The declaration is dated January 14, 2019.  (Doc. 646-1).

In order for Gilmore's state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of May 1, 1998.  *See Pegram*, 361 F.3d at 279.  The summary judgment evidence reflects that alleged discriminatory acts occurred before 1997 and after 2002.  The Court finds that the evidence does not support claims of alleged discrimination adverse to Gilmore in the relevant time period.

Gilmore must also make some showing of his relationship with Local 198 within the relevant time period.  Both parties agree that Gilmore's membership lapsed in 1997.  Gilmore argues that there is an issue of fact as to when in 1997 the membership lapsed and whether Gilmore was within the six-month grace period after his membership lapsed in May 1997 or later.  It is unclear when the membership delinquency occurred.  Therefore, there is a genuine issue of fact regarding whether Gilmore was a member of Local 198 in the relevant time period.

Gilmore's claims under Section 1981 are subject to a four-year prescriptive period.  Since Gilmore filed suit on May 1, 1998, the evidence must show that the last alleged act of discrimination occurred between May 1, 1994 and May 1, 1998.  The record reflects allegations of acts before 1997 and a membership that lapsed during this same time.  This timeframe falls within the relevant time period.

Regarding Gilmore's claims of racial discrimination under Title VII, it is undisputed that Gilmore did not file a charge with the EEOC.  Rather, Gilmore attempts to prove exhaustion of administrative remedies and timely filing of suit by "piggybacking" upon charges filed by others.  Gilmore's argument does not specifically argue which charge Gilmore attempts to "piggyback" upon; however, the opposition memoranda generally argue "piggybacking" on Fox's Charge of

Discrimination and Earnest Ford's Charge of Discrimination. (Doc. 648 at p. 11, citing Doc. 639-23, 639-52). Fox's charge reflects complaints of racial discrimination by Local 198 from January 1998 to November 8, 2000. Fox claims that he was "denied recall". (Doc. 639-23). Gilmore has not made a showing that he is "similarly situated" to Fox. *See Price*, 459 F.3d at 598-99. Gilmore makes claims of racial discrimination in job referrals and of racial epithets, (Doc. 639-27 at pp. 96-97, 99, 102; Doc. 646-1), but there is no evidence of specifically being denied recall as Fox complained or of being a member of Local 198 in 1998-2000. While Fox's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "*No* Blacks have been recalled in the past 300 days," Doc. 639-23 at p. 1 (emphasis added)) and Fox filed suit as a plaintiff named in the original complaint, (Doc. 1), there is no evidence that Gilmore meets the first condition to invoke the single filing rule. *See Price*, 459 F.3d at 598-99.

Ford's charge reflects complaints of racial discrimination by Local 198 from January 1998 to May 24, 2001. Ford claims that he was "continuously" subjected to unequal treatment, specifically regarding "call-outs" and "call-backs". (Doc. 639-52). Gilmore has not made a showing that he is "similarly situated" to Ford. *See Price*, 459 F.3d at 598-99. Gilmore makes claims of racial discrimination in job referrals and racial epithets, (Doc. 639-27 at pp. 96-97, 99, 102; Doc. 646-1), but there is no evidence of specifically being subjected to unequal treatment regarding "call-outs" and "call-backs" as Ford complained or of being a member of Local 198 in 1998-2001. While Ford's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "Blacks, as a class, are similarly discriminated against on a continuous basis," Doc. 639-52 at p. 1) and Ford filed suit as a plaintiff named in the first amending complaint, (Doc. 227), there is no evidence that Gilmore meets the first condition to invoke the single filing rule. *See Price*, 459 F.3d at 598-99. Because Gilmore does not meet the requirements for the single file rule

or "piggyback" rule, there is no record of an EEOC charge filing to render Gilmore's filing of his Title VII claims timely.

Based on the foregoing, Larry Gilmore's claims under state law and Title VII are <u>dismissed with prejudice</u> based on untimeliness. Defendant's motion with regard to Larry Gilmore's claims under Section 1981 is <u>denied</u>.

### 22. John Green

Green is a named Plaintiff in the original complaint filed on May 1, 1998. (Doc. 1). Defendant argues that Green has not been a member of Local 198 since 1996, and Green testified that there were no alleged discriminatory acts after 1996. (Doc. 639-2 at p. 17, citing Doc. 639-4 at pp. 18, 23-24; Doc. 639-6). No EEOC charges have been produced. (Doc. 639-2).

Plaintiffs opposed Defendant's motion and argued that: he suffered racial discrimination by Local 198 personnel, including being called racial epithets, (Doc. 648 at p. 15, citing Doc. 285); Green testified that he was a member from 1974-early 1997, (Doc. 648 at p. 15, citing Doc. 639-4 at p. 3); that he "went through" the apprenticeship program, (Doc. 639-4 at p. 5); he "dropped" his membership due to disgust with discrimination, (Doc. 639-4 at p. 6); and that he "went to New Orleans" and filed complaints with the EEOC "two or three times", (Doc. 639-4 at p. 8).

In his supplemental opposition, Green offered his member biographic information produced by Defendant in discovery purporting to indicate that he was a member of Local 198 in 2001, and his original initiation date was 1974 and his "current initiation date was 2001". (Doc. 687 at p. 4, citing 687-1).

In order for Green's state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of May 1, 1998. *See Pegram*, 361 F.3d at 279. The summary judgment evidence reflects that alleged

discriminatory acts occurred through 1996. (Doc. 639-4 at pp. 18, 23-24; Doc. 639-6). The Court recognizes that Plaintiffs generally argue a continuous, unabated practice of racial discrimination before and after the filing of suit on May 1, 1998, (Doc. 648 at p. 6, citing Doc. 648-1, 648-2, 648-3, 648-4); however, Green does not offer evidence and complaints in different timeframes specific to him, and he does not present evidence of a general practice of discrimination or hostile work environment. Green's claims cannot be lumped together with the general claims of ongoing alleged discrimination simply to save his claims by the continuing violation doctrine. *Boyd*, 2015 WL 3969464, at *2; *Pegram*, 361 F.3d at 280. The evidence does not support timely claims of alleged discrimination adverse to Green under state law in the relevant time period.

Green must also make some showing of his relationship with Local 198 within the relevant time period. Defendant argues that Green has not been a member since 1996, and Green argues that he was a member until early 1997. Both parties cite to deposition testimony in support of their positions. Green has offered evidence of membership in 1974-early 1997 and 2001. Because it is unclear whether "early 1997" includes May or not, the Court finds that there is a genuine issue of fact regarding whether Green was a member in Local 198 in the relevant time period.

Green's claims under Section 1981 are subject to a four-year prescriptive period. Since Green filed suit on May 1, 1998, the evidence must show that the last alleged act of discrimination occurred between May 1, 1994 and May 1, 1998. The record reflects allegations of acts through 1996 and a membership that lapsed during this same time. This timeframe falls within the relevant time period.

Regarding Green's claims of racial discrimination under Title VII, Defendant acknowledges that Green testified to filing EEOC charges, but argues that no charge has been

produced. Plaintiffs, relying on Green's deposition testimony, argue that Green filed EEOC charges "two or three times". There are genuine issues of material fact whether Green filed EEOC charges, which would preclude Green from relying upon the "single file" rule or the "piggy-back" rule. *Nelson*, 1997 WL 567957, at * 5.

Based on the foregoing, John Green's claims under state law are <u>dismissed with prejudice.</u> Defendant's motion with regard to John Green's claims under Section 1981 and Title VII is <u>denied</u>.

### 23. George Hilliard

The same analysis as is applied above for Bell, Bennett and Brown, applies to Hilliard. Hilliard is named as a plaintiff in the original complaint filed on May 1, 1998. (Doc. 1). He has not given his deposition, responded to written discovery or filed an EEOC charge. Defendant's basis for moving for summary judgment on the untimeliness of Hilliard's claims is that Plaintiff cannot meet his burden to make a *prima facie* case. (Doc. 639-2 at pp. 34-35).

Plaintiffs responded, generally, by arguing, "The summary judgment at this time is limited to prescription and exhaustion. The Local 198 has gone beyond that with several claims including … George Hilliard …." (Doc. 648 at p. 20). The same is stated in the supplemental opposition. (Doc. 687 at p. 9). This is the full extent of Plaintiffs' opposition on behalf of George Hilliard.

For the same reasons set forth above regarding Bell, Bennett, and Brown, all claims by George Hilliard are <u>dismissed with prejudice</u>.

### 24. Michael Jackson

Jackson is a named Plaintiff in the original complaint filed on May 1, 1998. (Doc. 1). Defendant is seeking to dismiss Jackson's claims of racial discrimination under Title VII only. Defendant argues that Jackson has not filed EEOC charges adverse to Local 198. (Doc. 639-2 at p. 35, citing 639-73 at p. 14).

Plaintiffs opposed Defendant's motion and argued that Michael Jackson provided a questionnaire and the "piggy-back" rule should apply. (Doc. 648 at p. 13). Plaintiffs cite to "RD 285, at 20, Ex AE"; however, Doc. 285 is a memorandum in opposition to a prior motion for partial summary judgment, and there are no exhibits, "AE" or otherwise, made a part of the record at that citation. (Doc. 648 at p. 13, citing Doc. 285 at p. 20).

In his supplemental opposition, Jackson offered his member biographic information produced by Defendant in discovery purporting to indicate that he was a member of Local 198 in 1999, 2000, and 2001, and his original initiation date was 1989. (Doc. 688 at p. 3, citing 688-4). Jackson also argues that he experienced race discrimination by being denied job referrals, he was "harassed for discriminatory reasons", and he was "subjected to a hostile work environment". He also generally claims a practice of race discrimination. (Doc. 688 at p. 3, citing Doc. 688-5). No dates are provided.

Jackson must make some showing of his relationship with Local 198 within the relevant time period. Jackson has offered evidence of membership in 1989, 1999, 2000, and 2001, (Doc. 688-4). There is no evidence offered showing that Jackson was a member of Local 198 in the relevant time period.

Regarding Jackson's claims of racial discrimination under Title VII, it is undisputed that Jackson did not file a charge with the EEOC. Rather, Jackson attempts to prove exhaustion of administrative remedies and timely filing of suit by "piggybacking" upon charges filed by others. Jackson's argument does not specifically argue upon which charge Jackson attempts to "piggyback"; however, the opposition memoranda generally argue "piggybacking" on Fox's Charge of Discrimination and Earnest Ford's Charge of Discrimination. (Doc. 648 at p. 11, citing Doc. 639-23, 639-52). Fox's charge reflects complaints of racial discrimination by Local 198 from

January 1998 to November 8, 2000. Fox claims that he was "denied recall". (Doc. 639-23). Jackson must make a showing that he is "similarly situated" to Fox. *See Price*, 459 F.3d at 598-99. Jackson has shown that he was a member of Local 198 during this time frame, and he also raises allegations of being denied recall. (Doc. 688-5 at p. 3). Fox's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "*No* Blacks have been recalled in the past 300 days," Doc. 639-23 at p. 1 (emphasis added)), and Fox filed suit as a plaintiff named in the original complaint, (Doc. 1). Therefore, there is evidence that Jackson meets the conditions to invoke the single filing rule. *See Price*, 459 F.3d at 598-99.

Based on the foregoing, Defendant's motion regarding Michael Jackson's claims under Title VII only is <u>denied</u>.

### 25.   **Earnest Johnson**

Johnson is a named Plaintiff in the first amending complaint filed on July 27, 2001. (Doc. 227). It is undisputed that Johnson was a member of Local 198 at the time of his 2002 deposition; however, Johnson testified that his complaints of "being laid off before other people", "getting the dirtiest jobs" and "being called racially derogatory terms" took place before December 4, 1998. (Doc. 639-2 at p. 30, citing Doc. 639-56 at pp. 21-22, 61, 63-65, 95-96). Johnson has not filed an EEOC charge. (Doc. 639-2 at p. 30).

Plaintiffs opposed Defendant's motion and argued that Johnson's complaints of "layoffs, getting the dirtiest jobs, and racial epithets" were not complaints against Local 198 and should not be used to argue prescription. (Doc. 646 at p. 4). Instead, Johnson argues that Local 198 exercised "unfair work practices", specifically regarding recalls by new companies to the area. (Doc. 646 at p. 4, citing   Doc. 646-1 at pp. 5-7). No dates are provided. In reply, Defendant insists that Johnson's testimony regarding these alleged acts is that they all occurred before the date of his

questionnaire, December 4, 1998. (Doc. 654 at p. 10, citing Doc. 639-56 at pp. 95-96 (reflecting Johnson's testimony that all complaints of alleged discrimination occurred before he signed and dated the questionnaire on December 4, 1998)).

In order for Johnson's state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of July 27, 2001. *See Pegram*, 361 F.3d at 279. The summary judgment evidence reflects that alleged discriminatory acts occurred before December 1998. The Court recognizes that Plaintiffs generally argue a continuous, unabated practice of racial discrimination before and after the filing of suit on May 1, 1998, (Doc. 648 at p. 6, citing Doc. 648-1, 648-2, 648-3, 648-4); however, Johnson offers evidence and complaints in different timeframes specific to him. The two charges filed with the EEOC by Lee Fox (Doc. 639-23) and Earnest Ford (Doc. 639-52) upon which Johnson presumably wishes to "piggyback" both charge Local 198 with class-wide racial discrimination from January 1998 until as late as May 24, 2001. (Doc. 639-52). Johnson testified to "unfair work practices"; however, he also testified that this occurred before December 1998. Johnson's claims cannot be lumped together with the general claims of ongoing alleged discrimination simply to save his claims by the continuing violation doctrine. *Boyd*, 2015 WL 3969464, at *2; *Pegram*, 361 F.3d at 280. The Court finds that the evidence does not support claims of alleged discrimination adverse to Johnson in the relevant time period.

Johnson must also make some showing of his relationship with Local 198 within the relevant time period. Both parties agree that Johnson's membership was active in 2002. No parties have put forth evidence of any other dates of membership. Considering the evidence of Johnson's complaints of alleged discrimination before December 1998, it is unclear when Johnson's

membership began and ceased, if ever. Therefore, the Court finds that there is a genuine issue of fact regarding the timeframe of Johnson's membership in Local 198.

Johnson's claims under Section 1981 are subject to a four-year prescriptive period. Since Johnson filed suit on July 27, 2001, the evidence must show that the last alleged act of discrimination occurred between July 27, 1997 and July 27 2001. The record reflects allegations of acts before December 1998 and a membership that may have been active at this same time. This timeframe falls within the relevant time period.

Regarding Johnson's claims of racial discrimination under Title VII, it is undisputed that Johnson did not file a charge with the EEOC. Rather, Johnson attempts to prove exhaustion of administrative remedies and timely filing of suit by "piggybacking" upon charges filed by others. Johnson's argument does not specifically argue upon which charge Johnson attempts to "piggyback"; however, the opposition memoranda generally argue "piggybacking" on Fox's Charge of Discrimination and Earnest Ford's Charge of Discrimination. (Doc. 648 at p. 11, citing Doc. 639-23, 639-52). Fox's charge reflects complaints of racial discrimination by Local 198 from January 1998 to November 8, 2000. Fox claims that he was "denied recall". (Doc. 639-23). Johnson has alleged that he experienced unfair practices due to being denied recall. (Doc. 646 at p. 4, citing Doc. 646-1 at pp. 5-7). Johnson testified that the alleged activity occurred before December 1998. (Doc. 639-56 at pp. 95-96). This suggests that Johnson is able to make a showing that he was "similarly situated" to Fox. *See Price*, 459 F.3d at 598-99. Fox's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "*No* Blacks have been recalled in the past 300 days," Doc. 639-23 at p. 1 (emphasis added)) and Fox filed suit as a plaintiff named in the original complaint, (Doc. 1). The record reflects that Johnson is able to meet the conditions to invoke the single filing. *See Price*, 459 F.3d at 598-99.

Based on the foregoing, Earnest Johnson's state law claims are <u>dismissed with prejudice</u>. Defendant's motion with regard to Earnest Johnson's Section 1981 and Title VII claims is <u>denied</u>.

### 26.    Carl Judson

Judson is a named Plaintiff in the first amending complaint filed on July 27, 2001.  (Doc. 227).  Judson entered the apprenticeship training in 1982, completed training in 1986, and has been a member of Local 198 since that time.  (Doc. 639-2 at p. 30, citing Doc. 639-57 at p. 12).  Judson has not filed an EEOC charge.  (Doc. 639-2 at p. 30, citing Doc. 639-57 at p. 16).  Judson testified to working from 1999-2002, (Doc. 639-57 at p. 17); blacks being the first to be laid off from Borden in the 1980's, (Doc. 639-57 at pp. 23-28); racial slurs and graffiti in the workplace, (Doc. 639-57 at pp. 31-33, 70-72); unequal training opportunities, (Doc. 639-57 at pp. 56-59); and failure to "get recalls" in the 1980's, (Doc. 639-57 at p. 75).  He testified that he last worked with Local 198 in 1991.  (Doc. 639-2 at p. 31, citing Doc. 639-57 at p. 99).

Plaintiffs opposed Defendant's motion and agreed with Defendant's representations of Judson's testimony above.  Judson also argues that he "declares" that while working at Hall's Mortuary in 1999-2002, that he "went by the union two-three times a month, including the year before suit was filed".  While he was at the union, he would "hear about jobs" but not see them posted.  He does not know if these jobs "went to whites" without discovery.  While Judson does not cite to record evidence in support of these representations, the Court is aware of an unsigned declaration reflecting these representations.  (Doc. 646-1 at p. 9).  Because the declaration is not signed or authenticated, it is hearsay and shall not be considered by this Court on summary judgment. *See Smith v. Baton Rouge Radiology Group*, 2013 WL 4782142, *3 (M.D. La. Sept. 5, 2013).

In order for Judson's state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of July 27, 2001. *See Pegram*, 361 F.3d at 279. The summary judgment evidence reflects that alleged discriminatory acts occurred in the 1980's and up to 1991. There are other allegations of discriminatory acts without any showing of a time period. There is testimony of Judson working from 1999-2002; however, it is unclear whether this was through Local 198 or not. The Court recognizes that Plaintiffs generally argue a continuous, unabated practice of racial discrimination before and after the filing of suit on May 1, 1998, (Doc. 648 at p. 6, citing Doc. 648-1, 648-2, 648-3, 648-4); however, Judson offers evidence and complaints in different timeframes specific to him. The two charges filed with the EEOC by Lee Fox (Doc. 639-23) and Earnest Ford (Doc. 639-52) upon which Judson presumably wishes to "piggyback" both charge Local 198 with class-wide racial discrimination from January 1998 until as late as May 24, 2001. (Doc. 639-52). Judson testified that all acts occurred by 1991; however, he also testified to working from 1999-2002. The Court finds that there are genuine issues of material fact regarding claims of alleged discrimination adverse to Judson in the relevant time period.

Judson must also make some showing of his relationship with Local 198 within the relevant time period. Both parties agree, and the evidence supports, that Judson's membership was active since 1982.

Judson's claims under Section 1981 are subject to a four-year prescriptive period. Since Judson filed suit on July 27, 2001, the evidence must show that the last alleged act of discrimination occurred between July 27, 1997 and July 27, 2001. The record reflects allegations of acts until 1991, general allegations of work from 1999-2002, and a membership that was active

at this same time. There are genuine issues of material fact regarding discriminatory acts within the relevant time period.

Regarding Judson's claims of racial discrimination under Title VII, it is undisputed that Judson did not file a charge with the EEOC. Rather, Judson attempts to prove exhaustion of administrative remedies and timely filing of suit by "piggybacking" upon charges filed by others. Judson's argument does not specifically argue upon which charge Judson attempts to "piggyback"; however, the opposition memoranda generally argue "piggybacking" on Fox's Charge of Discrimination and Earnest Ford's Charge of Discrimination. (Doc. 648 at p. 11, citing Doc. 639-23, 639-52). Fox's charge reflects complaints of racial discrimination by Local 198 from January 1998 to November 8, 2000. Fox claims that he was "denied recall". (Doc. 639-23). Judson has made a showing that he is "similarly situated" to Fox. *See Price*, 459 F.3d at 598-99. Judson makes claims of racial discrimination in being denied recalls as Fox complained, (Doc. 639-57 at p. 75) and of being a member of Local 198 in 1998. Fox's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "*No* Blacks have been recalled in the past 300 days," Doc. 639-23 at p. 1 (emphasis added)), and Fox filed suit as a plaintiff named in the original complaint, (Doc. 1); therefore, there is evidence that Judson is able to meet the conditions to invoke the single filing rule. *See Price*, 459 F.3d at 598-99. Because Judson meets the requirements for the single file rule or "piggyback" rule, there is record of an EEOC charge filing to render Judson's filing of his Title VII claims timely.

Based on the foregoing, Defendant's motion with regard to the timeliness of Carl Judson's claims is <u>denied</u>.

### 27.    **Ivan Morgan**

Morgan is a named Plaintiff in the first amending complaint filed on July 27, 2001. (Doc. 227). Morgan has not given his deposition. He completed a questionnaire, and he did not provide any dates regarding potential claims of discriminatory acts related to Local 198. (Doc. 639-2 at p. 31, citing Doc. 639-58). In his questionnaire, Morgan represents the following: that he was denied employment with Local 198 for discriminatory reasons, (Doc. 639-58 at p. 2); that he was discriminated against with regard to job referrals, (Doc. 639-58 at p.5); and that he was not recalled due to discrimination, (Doc. 639-58 at p. 7). Morgan does not have any proof of a general policy or practice of discrimination. (Doc. 639-58 at p. 2).

Plaintiffs opposed Defendant's motion and argued that Defendant did not provide dates of membership "as they should have" and because Local 198 already "produced them, the Local is not letting us have access to them on summary judgment". (Doc. 648 at p. 19). Morgan adds that he did not receive referrals due to racial discrimination. (Doc. 648 at p. 19, citing Doc. 639-58 at pp. 2, 5, 7, 10, 12-13).

In their supplemental opposition, Plaintiffs offered member biographic information produced by Defendant in discovery which purports to show that Morgan was a member of Local 198 in 2000 and 2001, and his original initiation date was 1991. (Doc. 687 at p. 8, citing Doc. 687-11). Plaintiffs also argue that in the questionnaire, "Mr. Gatlin indicated he was not getting call backs or call outs and that blacks were not being placed in supervisory positions due to racial discrimination". (Doc. 687 at p. 8). The Court believes "Mr. Gatlin" is likely a typographical error, but the Court reviewed Morgan's questionnaire, and it does not reflect this reference. (Doc. 639-58).

In order for Morgan's state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of

July 27, 2001.  *See Pegram*, 361 F.3d at 279.  The record offered on summary judgment does not reflect any dates of alleged discriminatory acts.  Significantly, Morgan states in his questionnaire that he does not have any proof that Local 198 has a general practice of discrimination, (Doc. 639-58 at p. 2).  The Court recognizes that Plaintiffs generally argue a continuous, unabated practice of racial discrimination before and after the filing of suit, (Doc. 648 at p. 6, citing Doc. 648-1, 648-2, 648-3, 648-4); however, Morgan does not offer evidence and complaints in any timeframe, and he denies a general practice of discrimination.  The same rationale holds true for the two charges filed with the EEOC by Lee Fox (Doc. 639-23) and Earnest Ford (Doc. 639-52) upon which Morgan presumably wishes to "piggyback".  Both charge Local 198 with class-wide racial discrimination from January 1998 until as late as May 24, 2001.  (Doc. 639-52).  Although Morgan was a member in 2000 and 2001, Morgan denies general practices of discrimination, which calls the content of the EEOC charges into question regarding applicability to Morgan.  Morgan's claims cannot be lumped together with the general claims of ongoing alleged discrimination simply to save his claims by the continuing violation doctrine.  *Boyd*, 2015 WL 3969464, at *2; *Pegram*, 361 F.3d at 280.  The Court finds that the evidence does not support claims of alleged discrimination adverse to Morgan in the relevant time period.

Morgan must also make some showing of his relationship with Local 198 within the relevant time period.  Plaintiffs provided evidence of membership in 1991, 2000 and 2001.  Therefore, the Court finds that there is a sufficient showing that Morgan was a member in Local 198 in 2000-2001.

Morgan's claims under Section 1981 are subject to a four-year prescriptive period.  Since Morgan filed suit on July 27, 2001, the evidence must show that the last alleged act of discrimination occurred between July 27, 1997 and July 27 2001.  The record reflects allegations

of acts without any specific dates and a membership that was active at this same time. Morgan's questionnaire was dated November 16, 1998, which falls within this time period and presumably addresses alleged acts that occurred up until this time period. There are genuine issues of material fact as to the timeliness of Morgan's claims under Section 1981.

Regarding Morgan's claims of racial discrimination under Title VII, it is undisputed that Morgan did not file a charge with the EEOC. Rather, Morgan attempts to prove exhaustion of administrative remedies and timely filing of suit by "piggybacking" upon charges filed by others. Morgan's argument does not specifically argue upon which charge Morgan attempts to "piggyback"; however, the opposition memoranda generally argue "piggybacking" on Fox's Charge of Discrimination and Earnest Ford's Charge of Discrimination. (Doc. 648 at p. 11, citing Doc. 639-23, 639-52). Fox's charge reflects complaints of racial discrimination by Local 198 from January 1998 to November 8, 2000. Fox claims that he was "denied recall". (Doc. 639-23). Morgan must make a showing that he is "similarly situated" to Fox. *See Price*, 459 F.3d at 598-99. Morgan specifically alleges being denied recall as Fox complained and of being a member of Local 198 in 2000. Fox's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "*No* Blacks have been recalled in the past 300 days," Doc. 639-23 at p. 1 (emphasis added)), and Fox filed suit as a plaintiff named in the original complaint, (Doc. 1); therefore, there is a showing that Morgan meets the conditions to invoke the single filing rule. *See Price*, 459 F.3d at 598-99.

Based on the foregoing, Ivan Morgan's claims under state law are <u>dismissed with prejudice</u>. Defendant's motion with regard to Ivan Morgan's claims under Section 1981 and Title VII is <u>denied.</u>

### 28. Sam Parker

Parker is a named Plaintiff in the original complaint filed on May 1, 1998. (Doc. 1). Defendant argues that: Parker's latest incident referred to in his questionnaire is 1991, (Doc. 639-2 at p. 24, citing Doc. 639-37 at pp. 15-16, 639-38 at p. 6); Parker refers to an incident in the 1970's, (Doc. 639-2 at p. 24, citing Doc. 639-38 at p. 5); Parker's timely allegations regarding work assignments and terminations fall under the aegis of the company, not Local 198, (Doc. 639-2 at p. 25, citing Doc. 639-37 at p. 49); and Parker filed an EEOC charge in August 2001 and attached his October 1998 questionnaire, (Doc. 639-2 at p. 25, citing 639-38, 639-39).

The questionnaire reflects the following: that Parker has proof that Local 198 has a general policy and practice of discrimination, (Doc. 639-38 at p. 2); that Local 198 discriminated with regard to job referrals, (Doc. 639-38 at p. 5); that Parker was unfairly denied a job assignment, (*id.*); that Parker was harassed, (Doc. 639-38 at p. 6); that Parker was retaliated against, (*id.*); that Local 198 failed to defend Parker, (*id.*); that he was subjected to a hostile work environment in 1991, (*id.*); that Parker was not recalled due to discrimination, (Doc. 639-38 at p. 7); that Parker was precluded from working as a supervisor for discriminatory reasons, (*id.*); and that Parker has been a member of Local 198 since 1976, (Doc. 639-38 at p. 9).

Parker's EEOC charge claims racial discrimination from January 1, 1998 to May 24, 2001. Specifically, it states that Parker "alleged that he has been continuously subjected to unequal terms and conditions or employment with regard to 'call-outs' and 'call-backs' because of his race, Black and that Blacks, as a class, are similarly discriminated against on a continuous basis." (Doc. 639-39 at p. 1).

In response, Plaintiffs argue the representations of Parker in his questionnaire and EEOC charge as set forth above. (Doc. 648 at p. 16).

In Plaintiffs' supplemental opposition, Plaintiffs provide Parker's member biographic information produced by Defendant in discovery indicating that Parker was a member of Local 198 in 1999, 2000, and 2001, with an original initiation date of 1976. (Doc. 687 at p. 5, citing Doc. 687-11).

In order for Parker's state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of May 1, 1998. *See Pegram*, 361 F.3d at 279. The record offered on summary judgment reflects specific allegations of alleged discriminatory acts in the 1970's and 1991. Although the specific allegations and specific dates do not fall within the year before Parker filed suit, Parker also specifically alleged a time period of January 1998 – May 2001 in his EEOC charge which reflected general allegations of continuous racial discrimination. This time period encompasses the year before Parker filed suit.

Parker must also make some showing of his relationship with Local 198 within the relevant time period. Parker offered evidence of membership from 1976 to the present day. Defendant does not argue that Parker was not a member at any relevant time period. Therefore, the Court finds that there is sufficient evidence to at least create a genuine issue of fact as to whether Parker was a member of Local 198 in the relevant time period.

Parker's claims under Section 1981 are subject to a four-year prescriptive period. Since Parker filed suit on May 1, 1998, the evidence must show that the last alleged act of discrimination occurred between May 1, 1994 and May 1, 1998. The record reflects allegations of acts in the 1970's, up to 1991, and January 1, 1998-May 24, 2001, and a membership that was active at this same time. There are genuine issues of material fact as to the timeliness of Parker's claims under Section 1981.

Regarding Parker's claims of racial discrimination under Title VII, it is undisputed that Parker filed a charge with the EEOC on August 15, 2001. (Doc. 639-39). It appears that this charge was filed within 300 days of alleged discriminatory acts in May 2001. (*Id*.). While the discriminatory acts specifically detailed in Parker's questionnaire allegedly took place from 1976-1998, Parker's EEOC charge provides a time period of alleged unfair conduct from 1998-2001.

Further, the law is clear that a plaintiff must exhaust his administrative remedies *before* seeking relief from the court. *Williams*, 2015 WL 5318945, at *3. Here, Parker filed suit almost three years *before* filing a charge with the EEOC. Parker is prohibited from "piggy-backing" on another Plaintiff's EEOC charge to salvage his complaint of racial discrimination with the Court, because he filed his own EEOC charge. *Nelson*, 1997 WL 567957, at *5. Additionally, Parker filed suit before completing his questionnaire.

Based on the foregoing, Defendant's motion with regard to Sam Parker's claims under state law and Section 1981 is <u>denied</u>. Sam Parker's claims under Title VII are <u>dismissed with prejudice</u> based on untimeliness.

### 29.    Donald Robertson

Robertson is a named Plaintiff in the original complaint filed on May 1, 1998. (Doc. 1). Defendant is seeking to dismiss Robertson's claims of racial discrimination under Title VII only. Defendant argues that Robertson has not produced an EEOC charge or right to sue letter. (Doc. 639-2 at p. 36, citing Doc. 639-77).

Plaintiffs opposed Defendant's motion and argued that Donald Robertson provided a questionnaire and the "piggy-back" rule should apply. (Doc. 648 at p. 13). Plaintiffs cite to "RD 285, at 14 of 32, Ex J1 and J2"; however, Doc. 285 is a memorandum in opposition to a prior motion for partial summary judgment, and there are no exhibits, "J1 and J2" or otherwise, made a

part of the record at that citation. (Doc. 648 at p. 13, citing Doc. 285 at p. 14). There is no questionnaire in the record for Donald Robertson.

In his supplemental opposition, Robertson offered his member biographic information produced by Defendant in discovery purporting to indicate that he was a member of Local 198 in 1999, 2000, and 2001, and his original initiation date was 1989 and his "current initiation date was 1994". (Doc. 688 at p. 3, citing 688-8). There is no questionnaire in the record for Donald Robertson.

Robertson must make some showing of his relationship with Local 198 within the relevant time period. Robertson has offered evidence of membership in 1989, 1994, 1999, 2000, and 2001, (Doc. 688 at p. 3, citing 688-8). Therefore, there is a genuine issue of material fact as to whether Robertson was a member of Local 198 in the relevant time period.

Regarding Robertson's claims of racial discrimination under Title VII, it is undisputed that Robertson did not file a charge with the EEOC. Rather, Robertson attempts to prove exhaustion of administrative remedies and timely filing of suit by "piggybacking" upon charges filed by others. Robertson's argument does not specifically argue upon which charge Robertson attempts to "piggyback"; however, the opposition memoranda generally argue "piggybacking" on Fox's Charge of Discrimination and Earnest Ford's Charge of Discrimination. (Doc. 648 at p. 11, citing Doc. 639-23, 639-52). Fox's charge reflects complaints of racial discrimination by Local 198 from January 1998 to November 8, 2000. Fox claims that he was "denied recall". (Doc. 639-23). Robertson must make a showing that he is "similarly situated" to Fox. *See Price*, 459 F.3d at 598-99. Robertson has shown that he was a member of Local 198 during this time frame, but he does not show allegations of being denied recall. Therefore, there is insufficient support for Robertson's argument that he is similarly situated to Fox. While Fox's charge may be interpreted to include

notice of a collective or class-wide nature (i.e., "*No* Blacks have been recalled in the past 300 days," Doc. 639-23 at p. 1 (emphasis added)) and Fox filed suit as a plaintiff named in the original complaint, (Doc. 1), Robertson did not meet the first condition to invoke the single filing rule. *See Price*, 459 F.3d at 598-99.

Ford's charge reflects complaints of racial discrimination by Local 198 from January 1998 to May 24, 2001. Ford claims that he was "continuously" subjected to unequal treatment, specifically regarding "call-outs" and "call-backs". (Doc. 639-52). Robertson does not show support for allegations of unequal treatment regarding "call-outs" and "call-backs" as Ford complained and of being a member of Local 198 in 1998. While Ford's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "Blacks, as a class, are similarly discriminated against on a continuous basis," Doc. 639-52 at p. 1), and Ford filed suit as a plaintiff named in the first amending complaint, (Doc. 227), there is an insufficient showing that Robertson meets the first condition to invoke the single filing rule. *See Price*, 459 F.3d at 598-99. Because Robertson offers insufficient evidence to meet the requirements for the single file rule or "piggyback" rule, there is no record of an EEOC charge filing to render Robertson's filing of his Title VII claims timely.

Based on the foregoing, Donald Robertson's claims under Title VII only are <u>dismissed with prejudice</u>. Donald Robertson's claims under state law and Section 1981 remain pending.

### 30. Michael Robertson

Robertson is named in the first amending complaint filed on July 27, 2001. (Doc. 227). Robertson did not oppose Defendant's motion to dismiss in Plaintiffs' first opposition and is listed on Mr. Wilson's statement of Plaintiffs with no opposition to the motion. (Doc. 646 at p. 9). In the revised chart, Plaintiffs maintain that Michael Robertson has no opposition to Defendant's

motion; however, the chart indicates that Michael Robertson changed to a Plaintiff whose claims under Title VII only are at issue in the motion. (Doc. 690-1). Given the change from "all claims" to "Title VII only", this issue was raised at the telephone conference with the Court and all counsel on May 31, 2019. Counsel for Defendant agreed to "look into this" and advise the Court. By letter to the Court, Ms. Picard confirmed that all claims brought by Michael Robertson are at issue in Defendant's motion. (Doc. 690-1). Michael Robertson does not oppose the instant motion.

Based upon the record and the applicable law set forth above, as well as the fact that Michael Robertson does not oppose Defendant's motion, the Court finds that Defendant's motion has merit, and Michael Robertson's claims are <u>dismissed with prejudice</u>.

### 31. James Snowden

Snowden is named as a plaintiff in the amended complaint filed on November 4, 2002. (Doc. 493). Defendant avers that he has not given his deposition, responded to written discovery or filed an EEOC charge. Defendant's basis for moving for summary judgment on the untimeliness of Snowden's claims is that Plaintiff cannot meet his burden to make a *prima facie* case. (Doc. 639-2 at p. 35). Plaintiffs state in their statement of issues of material fact that Snowden responded to discovery. However, there is no production or citation to support this representation. (Doc. 688-9 at p. 3).

Plaintiffs did not address Snowden's claims in their first opposition, as they did with the other Plaintiffs similarly situated to Snowden (*i.e.,* Plaintiffs Bell, Bennett, Brown and Hilliard). (Doc. 648 at p. 20). In supplemental opposition, Snowden argues that he provided an "unsigned response" to the questionnaire and that Plaintiffs do not "have his dates of membership". (Doc. 688 at p. 4, citing Doc. 688-7). The questionnaire that is purported to be for Snowden is not only unsigned and undated, but it is also incomplete. It is also produced under cover from counsel for

Defendant dated January 18, 2002, and does not reference the questionnaire in any way. (Doc. 688-7). The Court will not consider the purported questionnaire of Snowden as it is an incomplete and unauthenticated document that equates to unreliable hearsay evidence. *See Smith v. Baton Rouge Radiology Group*, 2013 WL 4782142, *3 (M.D. La. Sept. 5, 2013).

While Plaintiffs are correct that the subject motion is limited solely to prescription and exhaustion, Defendant has shown an absence of evidence to support the timeliness of Plaintiff's claims. The burden then shifts to Plaintiffs. Plaintiffs have failed in their burden to show that there is any genuine issue of material fact for trial regarding the timeliness of these claims. *Matsushita Elec. Indus. Co*., 475 U.S. at 586-87. Plaintiffs' burden is not satisfied by general, conclusory allegations in the complaint or allegations that are unsubstantiated in the record. *Little*, 37 F.3d at 1075. Plaintiffs may not rely on the pleadings. *Weyant*, 917 F.2d at 209. General allegations that fail to reveal detailed and precise facts will not prevent the award of summary judgment. *Walton*, 20 F.3d at 1352. Simply put, the record is void of any showing of any facts particular to Snowden that may show that there is a genuine issue of material fact for trial. There is no record evidence that Snowden was a member of Local 198 or the time period of membership; there is no record evidence that Snowden was allegedly discriminated against by Local 198 in the relevant time period. There is no record evidence that Snowden exhausted his administrative remedies, filed a charge with the EEOC, received a right to sue letter, or is able to "piggyback" on any other named Plaintiff.

For these reasons, all claims by James Snowden are <u>dismissed with prejudice</u>.

### 32.    Charles Taylor, Sr.

Taylor is a named Plaintiff in the first amending complaint filed on July 27, 2001. (Doc. 227). Taylor entered apprenticeship training in 1975, completed training in 1977, and has been a

member of Local 198 since that time. (Doc. 639-2 at pp. 32, citing Doc. 639-63 at pp. 10-11). Taylor has not filed an EEOC charge. (Doc. 639-2 at p. 33, citing Doc. 639-63 at p. 16). Taylor testified to working from 1985-2002, (Doc. 639-63 at pp. 12-13, 16); unfair treatment in the 1970's and 1980's (*id.*); and that all incidents of which he complains took place before 1985, (Doc. 639-63 at pp. 16-17).

Plaintiffs opposed Defendant's motion and stated that Taylor "dropped his membership in 1985 and that he claims discrimination in the 1970's and 1980's. However, Plaintiffs argue that Taylor is entitled to the continuous tort exception and the "piggy-back" rule. (Doc. 648 at p. 20).

In his supplemental opposition, Taylor provided "member biographic information which indicates that Ivan Morgan was a Union Member". (Doc. 687 at p. 9). The Court finds Taylor's reference to "Ivan Morgan" to be a typographical error as Plaintiffs submitted into the record member information for Taylor at Doc. 687-13. This information reflects membership in 2001, with an original initiation date in 1977 and the "current initiation date in 2001". (Doc. 687-13).

In order for Taylor's state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of July 27, 2001. *See Pegram*, 361 F.3d at 279. The summary judgment evidence reflects that alleged discriminatory acts occurred in the 1970's and 1980's up to 1985. The Court recognizes that Plaintiffs generally argue a continuous, unabated practice of racial discrimination before and after the filing of suit on May 1, 1998, (Doc. 648 at p. 6, citing Doc. 648-1, 648-2, 648-3, 648-4); however, Taylor offers evidence and complaints in different timeframes specific to him. The two charges filed with the EEOC by Lee Fox (Doc. 639-23) and Earnest Ford (Doc. 639-52) upon which Taylor presumably wishes to "piggyback" both charge Local 198 with class-wide racial discrimination from January 1998 until as late as May 24, 2001. (Doc. 639-52). Taylor testified

to "unfair treatment"; however, he also testified that this occurred before 1985. Taylor's claims cannot be lumped together with the general claims of ongoing alleged discrimination simply to save his claims by the continuing violation doctrine. *Boyd*, 2015 WL 3969464, at *2; *Pegram*, 361 F.3d at 280. The Court finds that the evidence does not support claims of alleged discrimination adverse to Taylor in the relevant time period.

Taylor must also make some showing of his relationship with Local 198 within the relevant time period. Both parties agree that Taylor was a member from 1975 until 1985. There is an issue of fact as to whether Taylor's membership continued at any time between 1985 and 2001, when he renewed his membership again.

Taylor's claims under Section 1981 are subject to a four-year prescriptive period. Since Taylor filed suit on July 27, 2001, the evidence must show that the last alleged act of discrimination occurred between July 27, 1997 and July 27, 2001. The record reflects allegations of acts in the 1970's and 1980's up to 1985. These allegations do not fall within the relevant time period.

Regarding Taylor's claims of racial discrimination under Title VII, it is undisputed that Taylor did not file a charge with the EEOC. Rather, Taylor attempts to prove exhaustion of administrative remedies and timely filing of suit by "piggybacking" upon charges filed by others. Taylor's argument does not specifically argue upon which charge Taylor attempts to "piggyback"; however, the opposition memoranda generally argue "piggybacking" on Fox's Charge of Discrimination and Earnest Ford's Charge of Discrimination. (Doc. 648 at p. 11, citing Doc. 639-23, 639-52). Fox's charge reflects complaints of racial discrimination by Local 198 from January 1998 to November 8, 2000. Fox claims that he was "denied recall". (Doc. 639-23). Taylor has not made a showing that he is "similarly situated" to Fox. *See Price*, 459 F.3d at 598-99. Taylor only made general claims of "unfair treatment" in the 1970's and 1980's. He did not make claims

of racial discrimination in being denied recalls as Fox complained.  While Fox's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "*No* Blacks have been recalled in the past 300 days," Doc. 639-23 at p. 1 (emphasis added)), and Fox filed suit as a plaintiff named in the original complaint, (Doc. 1), there is an insufficient showing that Taylor is able to meet the conditions to invoke the single filing rule.  *See Price*, 459 F.3d at 598-99.

Ford's charge reflects complaints of racial discrimination by Local 198 from January 1998 to May 24, 2001.  Ford claims that he was "continuously" subjected to unequal treatment, specifically regarding "call-outs" and "call-backs".  (Doc. 639-52).  Taylor does not show support for allegations of unequal treatment regarding "call-outs" and "call-backs" as Ford complained. While Ford's charge may be interpreted to include notice of a collective or class-wide nature (i.e., "Blacks, as a class, are similarly discriminated against on a continuous basis," Doc. 639-52 at p. 1), and Ford filed suit as a plaintiff named in the first amending complaint, (Doc. 227), there is an insufficient showing that Taylor meets the first condition to invoke the single filing rule.  *See Price*, 459 F.3d at 598-99.

Based on the foregoing, Charles Taylor's claims are <u>dismissed with prejudice</u>.

### 33.    **Dennis Taylor**

Taylor is named in the first amending complaint filed on July 27, 2001.  (Doc. 227).  Taylor did not oppose this motion in Plaintiffs' first opposition and is listed on Mr. Wilson's statement of Plaintiffs with no opposition to the motion.  (Doc. 646 at p. 9).  Ms. Grodner submitted a supplemental opposition on behalf of Taylor and stated that Taylor has no opposition to this motion. (Doc. 688 at p. 4).  However, in the revised chart, Taylor remains listed as opposing the motion.  (Doc. 690-1).  Given the contradiction, this issue was raised at the telephone conference with the Court and all counsel on May 31, 2019.  Ms. Grodner agreed to "look into this" and advise

the Court. On June 5, 2019, by letter to the Court, Ms. Grodner confirmed that Dennis Taylor does not oppose the instant motion. Further, a third chart was submitted reflecting that Taylor does not oppose the instant motion. (Doc. 696-1).

Based upon the record and the applicable law set forth above, as well as the fact that Dennis Taylor does not oppose Defendant's motion, the Court finds that Defendant's motion has merit, and Dennis Taylor's claims are <u>dismissed with prejudice</u>.

### 34. David West

The same analysis as is applied above for Bell, Bennett, Brown, and Hilliard, applies to West. West is named as a plaintiff in the amending complaint filed on December 3, 2001. (Doc. 274, 283). He has not given his deposition, responded to written discovery or filed an EEOC charge. Defendant's basis for moving for summary judgment on the untimeliness of West's claims is that Plaintiff cannot meet his burden to make a *prima facie* case. (Doc. 639-2 at pp. 34-35).

Plaintiffs responded, generally, by arguing, "The summary judgment at this time is limited to prescription and exhaustion. The Local 198 has gone beyond that with several claims including … David West." (Doc. 648 at p. 20). The same is stated in the supplemental opposition. (Doc. 687 at p. 9). This is the full extent of Plaintiffs' opposition on behalf of David West.

For the same reasons set forth above regarding Bell, Bennett, Brown, and Hilliard, all claims by David West are <u>dismissed with prejudice</u>.

### 35. Tommie Williams

Williams is a named Plaintiff in the original complaint filed on May 1, 1998. (Doc. 1). Defendant argues that: Williams had been employed for six years at the time of his 2001 deposition, which computes to 1995, and his complaints pre-date the work beginning in 1995, (Doc. 639-2 at p. 26, citing Doc. 639-45 at pp. 12-13, 15); and Williams heard racially derogatory

language at every job he has ever worked but he did not file a complaint, (Doc. 639-2 at p. 27, citing Doc. 639-45 at pp. 45-46). Defendant also generally refers to Williams' EEOC charge and right to sue letter. (Doc. 639-2 at p. 27, citing Doc. 639-46).

Williams' EEOC charge claims racial discrimination from January 1, 1998 to May 24, 2001. Specifically, it states that Williams "alleged that he has been continuously subjected to unequal terms and conditions or employment with regard to 'call-outs' and 'call-backs' because of his race, Black and that Blacks, as a class, are similarly discriminated against on a continuous basis." It is dated August 15, 2001. (Doc. 639-46 at p. 1).

In response, Plaintiffs argue: that Williams was a member when suit was filed and at the time when he gave his deposition, (Doc. 648 at p. 16, citing Doc. 639-45); and Williams has been a member since 1976, (Doc. 648 at p. 16, citing Doc. 639-45 at p. 4). Williams states that he "explained his claims" in his questionnaire and refers the Court to Doc. 285 at p. 15 and "Ex Q1 and Q2". However, Doc. 285 is an opposition to a prior motion and there are no exhibits attached thereto, "Q1 and Q2" or otherwise. (Doc. 285). Plaintiffs also rely on the representations of Williams in his EEOC charge as set forth above. (Doc. 648 at p. 16).

In Plaintiffs' supplemental opposition, Plaintiffs provide Williams' member biographic information produced by Defendant in discovery indicating that Williams was a member of Local 198 in 1999 and 2000, with an original initiation date of 1976. (Doc. 687 at p. 6, citing Doc. 687-9).

In order for Williams' state law claims to be timely, he must show through competent summary judgment evidence that some allegedly discriminatory act occurred within one year of May 1, 1998. *See Pegram*, 361 F.3d at 279. The record offered on summary judgment reflects specific allegations of alleged discriminatory acts before 1995. Although the specific allegations

and specific dates do not fall within the year before Williams filed suit, Williams also specifically alleged a time period of January 1998 – May 2001 in his EEOC charge which reflected general allegations of continuous racial discrimination. This time period encompasses the year before Williams filed suit. The Court finds that there is a genuine issue of material fact as to the timeliness of Williams' claims.

Williams must also make some showing of his relationship with Local 198 within the relevant time period. Williams offered evidence of membership from 1976 to 2000. Defendant does not argue that Williams was not a member at any relevant time period.

Williams' claims under Section 1981 are subject to a four-year prescriptive period. Since Williams filed suit on May 1, 1998, the evidence must show that the last alleged act of discrimination occurred between May 1, 1994 and May 1, 1998. The record reflects allegations of acts before 1995 and from January 1, 1998-May 24, 2001. These allegations appear to fall within the relevant time period.

Regarding Williams' claims of racial discrimination under Title VII, it is undisputed that Williams filed a charge with the EEOC on August 15, 2001. (Doc. 639-46). It appears that this charge was filed within 300 days of alleged discriminatory acts in May 2001. (*Id*.). While the discriminatory acts specifically detailed in Williams' deposition took place before 1995, Williams' EEOC charge provides a discriminatory time period of 1998-2001.

Further, the law is clear that a plaintiff must exhaust his administrative remedies *before* seeking relief from the court. *Williams*, 2015 WL 5318945, at *3. Here, Williams filed suit almost three years *before* filing a charge with the EEOC. Williams is prohibited from "piggy-backing" on another Plaintiff's EEOC charge to salvage his complaint with the Court of racial discrimination, because he filed his own EEOC charge. *Nelson*, 1997 WL 567957, at *5.

Based on the foregoing, Defendant's motion with regard to Tommie Williams' claims under state law and Section 1981 is <u>denied</u>.  Tommie Williams' claims under Title VII are <u>dismissed with prejudice</u>.

**IV.     Conclusion**

Accordingly,

**IT IS ORDERED** that *Defendant United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, Local 198's Motion for Summary Judgment,* (Doc. 639) is **GRANTED in part and DENIED in part**.

Signed in Baton Rouge, Louisiana, on July 18, 2019.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**